**RECEIVED**

OCT 1 4 2014

**BY MAIL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

MILTON OHLSEN
Movant

v

UNITED STATES
Respondent

Case No.: _____

RE: 4:11-cr-284 ERW

ADDENDUM TO MOTIONS UNDER 28 USC s2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE

   COMES NOW Movant Milton Ohlsen, pro se, in support of his Motion to Vacate, Set Aside, or Correct the Judgment or sentence substantiated in the foregoing Motions.  Each claim herein shall be construed to consist of all paragraphs from each and every other claim as if they were all set forth in full under each claim.

   In response to Question 12 and the instructions to attach additional pages Movant states as follows:

--------------------------------------------------------------------------------  *p.²*

GROUND ONE
PROSECUTORIAL MISCONDUCT

## I. PROSECUTORIAL MISCONDUCT INTRODUCTION

Movant alleges the prosecution secured its conviction of Movant by and through the use of prosecutorial misconduct, thereby depriving Movant of his Constitutionally protected Rights, including his rights to Due Process and a Fair Trial.

Movant alleges the conviction was obtained the conviction was obtained by the unconstitutional failure of the prosecution to disclose evidence favorable to the defendant.

Were it not for prosecutorial misconduct, Movant would not have pleaded guilty and would have proceeded to trial.
Absent false statements and omissions to the grand jury the grand jury would not have voted to indict.
Had the government properly informed the Court the Court would not have accepted the plea.

*p3*

GROUND ONE
PROSECUTORIAL MISCONDUCT

## II. SPECIFIC ALLEGATIONS OF PROSECUTORIAL MISCONDUCT

Specific allegations include:

MISCONDUCT BY THE PROSECUTION
The prosecution failed to seek justice and instead merely sought to convict.
The prosecutor failed to disclose to the Court information that was directly adverse to the prosecution's position.
The government delayed the initiation of the case to gain tactical advantage.
The prosecution knowingly used illegal means, by and through their use of others, to obtain evidence.
The government discouraged others from giving information to the defense.
The government improperly communicated with witnesses.
The prosecution failed to disclose to the grand jury evidence which negated the guilt of Movant.
The government failed to make timely disclosure to the defense, failed to comply with discovery requests and did not pursue evidence that would have damaged the prosecution's case and aid Movant.
The government failed to preserve exculpatory evidence.

INDICTMENT AND GRAND JURY MISCONDUCT
The government provided false and misleading testimony to the grand jury.
The government withheld exculpatory information from the grand jury.

The material falsehoods were the entire basis for the indictment.

MISCONDUCT BEFORE THE COURT
The government had in its possession evidence that proved Movant was not present with Aaron Reid at the scene of the crime yet it withheld this evidence and falsely maintained to the Court that there was a factual basis for the indictment and plea.
The government withheld from the Court information pertaining to the credibility of government witnesses.

DUTY TO DISCLOSE
The government failed to disclose exculpatory information to the Grand Jury, the Defendant and the Court.

WITNESS INTIMIDATION
The government threatening to prosecute third parties.
The government was coordinating with and had control over an individual harassing Movant.
The government disseminated false and negative information, negatively impacting potential supporters.
The government utilized press leaks and statements to impact potential supporters and jurors.
The government repeatedly harassing witnesses and their families.

PROVIDED FALSE INFORMATION
The government mislead counsel and the press.  This conduct induce hatred and contempt of Movant.
The government provided false information to prison officials.

BREACHED ATTORNEY CLIENT RELATIONSHIP
The government violated the attorney client relationship pertaining to Attorney Witt with Movant and Aaron Reid.
The government violated Movant's attorney client relationship with attorney Cohen.
The government was aware that Cohen and Witt were providing information on clients.

-----------------------------------------------------------------------------------*p-t*---

### III.  SPECIFIC ALLEGATIONS OF FACTS
### SUPPORTING PROSECUTORIAL MISCONDUCT

   As there is cross over within the aforementioned allegations of prosecutorial misconduct, detailed specific examples of prosecutorial misconduct may be applicable to multiple categories of misconduct.  Specific examples of misconduct are listed below by general subject matter.

Movant alleges that the government withheld exculpatory evidence from the grand jury, the Court and the defendant.

Specific examples include:

A.   WITHHELD VIDEO AND AUDIO RECORDINGS
  1.  Video evidence, including video from the Ritz Carlton Hotel, proving Reid did not enter the Ritz Carlton on 10/15/2008.
This video completely contradicts Reid's story and Grand Jury testimony.
The Video would have been critical to impeaching Reid as a witness.

   2.  Video footage showing Ohlsen was not with Reid in Clayton, Mo on 10/ 15 / 2008.

   3.  Video footage showing Reid did not enter the restaurant(s) in Clayton, Mo on 10/ 15 / 2008.

   4.  Video evidence more clearly identifying the suspect and his gate.

   5.  Garage Video showing the suspect making a phone call.
This video does not sync with defendants phone records and would have been critical in showing other individuals committed the act and negating the government's version of the facts.

   6.  Reid's interrogations, including the interview where he finally recites the story the government took to the grand jury.
These recordings would have shown that Reid was coached and provided with the "facts" before reciting them.
These recordings also indicate that Reid was offered other "Deals" that were not disclosed to the defense.

   7.  Recordings of Movant's jail calls with Attorney Jeff Witt.
These recordings prove that Witt maintained an Attorney Client relationship with Movant.
Internal prosecution documents and opinions concurring that there may be legal issues with Witt's representation of Movant were also withheld.

   8.  Recording's showing Witt claimed to have a special relationship with law enforcement and was selling his testimony against Movant.

   9.  Recordings of Attorney Witt's jail visits with Movant were withheld.

   10.  Several of DF's text messages were omitted.


B.   WITHHELD INVESTIGATIVE REPORTS/ RECORDS
  1.  REID RELATED
  a.  Statements from other officers that officer Reid claimed to have traveled out of town to pick up explosives prior to 10/15/2008.

   b.  Report and evidence showing Reid and Ohlsen were together in Clayton Mo on 10/ 17/ 08 not 10/ 15/ 2008 were withheld.
These records were so specific as to contain were Movant parked his vehicle.

-------------------------------------------------------------------------------- 

2. TASK FORCE
Taskforce documents show the government engaged in criminal conduct.
The government violated the law and its duty to execute an arrest warrant and interfered with other law enforcement personnel's execution of there duties.
The governments willingness to violate the law would have called in to question their investigation and tactics and could have been used to impeach their credibility.  This would have also added validity to Movant's claim that Attorney Witt was working in collusion with the government to place evidence in Movant's possession for the government to seize at the time of arrest.

3.  ARREST REPORT
Police report from 12/15/2008 arrest of Movant was withheld until after the suppression hearing.
The arresting office could have been called to testify that he was in contact with the intelligence bureau at the time of the arrest, apprehended Movant alone without incident inside his office, Movant's vehicle was parked in the rear of the building and he was instructed to return to the office where he attempted to gain access to the vehicle and interviewed Movant's staff.
This testimony would contradict and impeach other testimony at the suppression hearing.

4.  Warrants and other records pertaining to other suspects were withheld.

5.   WITT RELATED
a.  Reports confirming Witt and Ohlsen maintained a professional relationship.

b.  Report showing Witt maintained a law office inside Movant's place of business.

c.  Reports showing Witt informed against other clients were withheld.  These reports would show a pattern of improper conduct by Witt and the government.

e.  Reports showing Witt worked to attempt to entrap his law clients while representing them.
One of these reports indicates he was working with law enforcement to entrap a client with the intent of creating leverage to induce the client to testify against Movant.

f.  Evidence showing Witt maintained a "special" relationship with the government.
Evidence has come to light showing Witt claims to have traded "testimony" against Movant for favors for other clients with the government.

g.  Evidence showing Witt was working with law enforcement during the searches of Movant's loft.

h.  Evidence indicating Witt staged, removed and planted evidence for law enforcement.

i.  Evidence that Movant's loft had been entered and tampered with during the search period.

j.  Evidence that the government knew Witt removed items from Movant's loft.

k.  Evidence that Witt employed a recording/ listening device during his jail interviews of Movant.

l.  The government was aware of criminal allegations and potential legal action against Witt.

m.  The government withheld copies of checks that Witt was paying on Movant's behalf.  This evidence that Witt owed Movant money could have been valuable to impeach him and as to his motive to lie.

n.  The government withheld from the Court and suppressed from reports that a hard drive they acquired from JB was actually removed from Movant's loft by Attorney Witt.  This hard drive contained video that would have cleared Movant in another criminal matter.  The government also withheld exculpatory statements clearing Movant in the matter.  The prosecution failed to report the existence of the statements and video evidence to the either court or defense and profited from the defendant being forced to plead in the case.  The increase in criminal history prejudiced defendant.

6.   MICHELLE OHLSEN
a.  Photographs from Movant's airplane hanger provided to the government by Michelle were withheld.

---------------------------------------------------------------------------------

The photographs indicate Michelle illegally entered the hanger and tampering with evidence.
They indicate she was stalking and investigating Movant.
The photographs also indicate she had access to items which were later "found" in other places/ searches.

  b.  Reports indicating that she was the source of information and documents relating to other investigations.
Michelle simultaneously claimed to federal authorities that Movant committed fraud and swore to the accuracy of the exact same documents in state court.
Her dual position and prior false statements could have been used to impeach her credibility.
Michelle and or those acting on her behalf illegally obtained evidence and turned it over to authorities in other cases.
These records would impeach her credibility and show government willingness to gather information obtained through illegal means.


 7.  ATTORNEY COHEN
The government was in possession of an email showing Cohen defrauded Movant.
The email was necessary to impeach Cohen's credibility and establish his motive for his false statements.


 8.  CHERVONDA SCOTT
The government withheld Chervonda Scott's statement from the grand jury.  Miss Scott's statement contradicts Aaron Reid's testimony as to where the alleged meetings took place.  This is exculpatory as it directly contradicts Reid's grand jury testimony and makes the government's timeline unfeasible.


 9.  EYEWITNESSES
  a.  The statements of eyewitness were withheld from the grand Jury.  Eyewitnesses indicated that the bomber was a light skinned black male (similar to Aaron Reid and dramatically different from Movant).

  b.  JG's statement was withheld, and intentionally omitted from the official investigative report.  JG's statement contradicts the government's timeline.  This statement supports Movant's version of the facts and contradicts grand jury testimony.

  c.  The government withheld that it conducted photographic lineups of Movant.  This was exculpatory as the eyewitness concluded the individual they witnesses was not Movant.


 10.  WITHHELD DEALS
  a.  The government withheld that it had agreed to forgo prosecution of Aaron Reid on other criminal matters in exchange for testimony.

  b.  The government withheld that Daniel Frazier received financial compensation for information.  This fact goes to her motive to make false statements.

  c.  The government withheld that it agreed not to prosecute Rick Kalina's father in exchange for Kalina following "scripted" testimony against Movant.  The government also dissuaded Kalina from informing Movant about the illegal search at 462 North Taylor.


 11.  OTHER SEARCHES
The government withheld information pertaining to other illegally performed searches.
  a.  The government illegally searched 462 North Taylor.  The government did not have a warrant or consent to search at the time of the search.

  b.  The government improperly searched 2309 North Ballas.  The government did not have a warrant or consent to search at the time of the search.

  c.  The government failed to disclose records pertaining to the searches of video recording devices.  Consent to search forms and an index of evidence would have been useful in proving the existence of other recording.  These recordings were exculpatory as they contradict grand jury testimony and the government's version of the facts.

------------------------------------------------------------------------------------- p.7 -----

This evidence shows a pattern of misconduct, would have been been valuable as impeachment evidence, adds validity to Movant's claims, and brings into question the government's tactics and credibility.

12.  EXPLOSIVE DETECTING CANINE
The government suppressed the fact that a canine was used in the search of Movant's loft.  This fact is exculpatory as the canine did not indicate the presence of any explosive material.

13.  EVIDENCE TAMPERING
   a.  The government withheld the fact that it altered a FD 597 to include evidence provided by Attorney Witt.

   b.  The government withheld that it represented evidence from the 12/19 search as being seized 12/22.  This may have been an attempt to cover up the fact that the scene had been tampered with.

   c.  The government withheld that it staged evidence for photographs in Movant's vehicle.

These facts would have been important in impeaching the credibility of the government's case and in the suppression of evidence.

14.  DATA ANALYSIS
   a.  The government had in its possession phone tracking data and analysis that prove Reid's story is false.  These records were clearly exculpatory, contrary to grand jury testimony and damaging to the validity of the governments case.

   b.  The government had in its possession Net Data Analysis that shows Movant's computer was accessed while he was in custody and before the government obtained a Warrant.  This evidence goes to impeaching the credibility of the investigation and the suppression of evidence.


IV.  PROSECUTORIAL MISCONDUCT/
WITHHELD EXCULPATORY EVIDENCE
CONCLUSION

    Had the government turned over, and or disclosed, the withheld exculpatory evidence the grand jury would not have voted to indite, Movant would not have entered his plea of guilty and the Court would not have been able to accept the plea.

GROUND TWO
INEFFECTIVE ASSISTANCE OF COUNSEL

## I.  INEFFICTIVE ASSISTANCE OF COUNSEL INTRODUCTION

Movant alleges he was denied effective assistance of counsel.

Movant contends that counsel's performance fell below an objective standard of reasonableness.
Counsels's errors were so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

Were it not for counsel's unprofessional errors the result of the proceedings would have been different.
Evidence would have been suppressed, the indictment would have been dismissed, witnesses would have been disqualified and impeached and no plea would have been entered.

There is a reasonable probability that, but for counsel's errors, Movant would not have pleaded guilty and would have insisted on going to trial.



*p.7*

GROUND TWO:
INEFFECTIVE ASSISTANCE OF COUNSEL


II. SPECIFIC ALLEGATIONS OF
INEFFECTIVE ASSISTANCE OF COUNSEL

FUNCTION AS ADVOCATE
Defense counsel did not act as a zealous advocate for the accused. At times counsel was half-hearted in their energies to the case. Counsel was not guided by the obligation to pursue the client's interests. As defendant maintained his innocence at all times to counsel, counsel was not truthful to the Court in representation of the matter of entering defendants guilty plea. Counsel did not win the confidence of its client. Defense Counsel, being a CJA appointment, did not perform in the same manner as it would have had it been privately retained or as the federal public defender would have. Counsel did not dedicate the resources needed to put on an adversarial challenge.

DELAYS
Counsel mislead the court and defendant in order to obtain continuances, violating defendant's speedy trial rights and giving up tactical advantage. Defense counsel's workload interfered with the rendering of quality representation.

DUTY TO REPRESENT
Counsel allowed pier pressure to influence its representation of its client.

COMMUNICATION WITH CLIENT
Communication with counsel was often neither prompt nor effective.
Counsel failed to communicate a plea offer. In fact counsel claimed to not even be aware there were any plea negations available until they received the second plea offer approximately 2 weeks before the trial date.

RELATIONSHIP WITH CLIENT
Counsel's representation deviated from the discussed objectives of the representation. Counsel failed to promptly and thoroughly investigate. Counsel abandoned issues that it had assured defendant would be preserved for appeal (such as Attorney Cohen's involvement, NY ATF recordings,..)
Counsel often arrived late to client meetings, was tired and in a rush to leave.
Counsel excluded defendant from decisions pertaining to the purpose, objectives and means of representation.
Counsel did not consult with defendant on technical, legal, strategic and tactical issues.
Counsel was elusive on appeal issues and their availability/ ability to represent defendant on appeal. Several issues were to be preserved for appeal such as Attorneys Cohen and Witt's contact with law enforcement and suppression of evidence.
Counsel did not view the attorney client relationship as a joint undertaking and failed to have early and frequent discussions about the progress of applicable proceedings and the events which the client might reasonable anticipate.
Communication between attorney and client was an issue of contention resulting in a fundamental breakdown of the attorney client relationship.

INTERVIEWING
Counsel failed to learn all the relevant facts known to the accused. This hampered counsel's ability to impeach witnesses and prepare for trial. Counsel promised several sessions in which they would learn all the relevant facts including a complete weekend of interviews that never occurred. Due to counsel's failure to learn all the facts in a timely fashion they were unable to effectively impeach witnesses.

FEES
Counsel diverted funds which were to be used to purchase trial clothing for defendant.
Counsel charges defendant's family to correct information in the PSR.

------------------------------------------------------------------------------------ *p10*---

CONFLICTS
Counsel was involved in another case where Attorney Witt's corruption was at issue.  Counsel placed the interests of its paying client over that of its appointed client.

ACTION
Counsel failed to take prompt legal action to preserve important rights of the defendant.
Counsel's actions denied Defendant his right to testify.
Counsel constructively denied Defendant his right to cross examine witnesses.
Counsel did not properly advise client, including: aspects of the case, investigation, elements, witnesses, proof, sentencing, and appeal issues.

DUTY TO KEEP CLIENT INFORMED
Defense counsel did not keep its client informed of the developments in the case and the progress of preparing the defense nor did counsel comply with reasonable requests for information.  Counsel did not explain developments in the case to the extent reasonably necessary to permit client to make informed decisions regarding the representation.
Counsel did not provide sufficient information for its client to participate intelligently in decisions concerning the objectives of representation and the means by which they are to be pursued.
Counsel's failure to keep defendant informed throughout the process eliminated Movant's ability to make informed decisions and rendered his plea unknowing and involuntary.
Counsel delayed providing Movant with his legal files.
Counsel did not provide Movant with copies of filings.

DUTY TO INVESTIGATE
Counsel failed, entirely or at a time where it could be of use, to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction.
Counsel failed to secure information in the possession of the prosecution and law enforcement authorities.
Counsel failed to locate persons who observed the criminal act and who had information concerning it.
Counsel failed to secure the cooperation of potential witnesses.
Counsel failed to independently verify information received from the government.
Counsel failed to establish a well founded basis for suppression of evidence.
Counsel failed to adequately investigate the elements of the offense.
Counsel was unable and unprepared to cross examine and impeach witnesses.
Counsel was not prepared to conduct plea negotiations.
Counsel failed to adequately investigate the character and background of witnesses.
Counsel failed to learn the conditions of the scenes.
Counsel failed to identify eyewitnesses and learn their capacity for observation.

PROSPECTIVE WITNESSES
Counsel failed to properly or entirely interview prospective witnesses.

EXPERT WITNESSES
Counsel failed to consult with and hire expert witnesses.

PHYSICAL EVIDENCE
Counsel failed to examine and preserve physical evidence.

ATTORNEY BAIT AND SWITCH
Counsel represented to Movant and the Court that Adam Fein would be representing defendant with the assistance of Gilbert Sison.  At some point in time, and without Movant or the Court's knowledge and consent, Marc Johnson took over as lead counsel.  Mr. Johnson was far less experienced than Mr. Fein.  It was the expressed intention of the Court to provide Defendant with an experienced litigator as lead counsel.  The skills of an experienced trial attorney such as Mr. Fein were necessary for defendant to prevail.

SPEEDY TRIAL
Counsel failed to perform calculations, as repeatedly requested by Movant.
Extensions were used to lighten counsel's work load not on Movant's case.
Movant contended that he wanted a speedy trial and a prepared attorney.

--------------------------------------------------------------------------------

GROUND TWO
INEFFECTIVE ASSISTANCE OF COUNSEL

III.  SPECIFIC ALLEGATIONS OF FACTS SUPPORTING
INEFFECTIVE ASSISTANCE OF COUNSEL

As there exists cross over within the aforementioned allegations of ineffective assistance of counsel, detailed specific examples of ineffective assistance may be applicable to multiple categories of ineffective assistance.  Specific examples of ineffective assistance are listed below by general subject matter.

A.   FAILURE TO INVESTIGATE, PREPARE FOR TRIAL AND PREPARE DEFENSES

1.  IMPEACHMENT EVIDENCE
Counsel failed to investigate evidence, necessary to impeach the testimony of witnesses and the credibility of the government's investigation.

Specific examples include:

a.  Officer Aaron Reid
   Movant provided Counsel with a list of "Reid's Bad Deeds", including other acts similar to the instant offenses.  Movant provided counsel with specific details to confirm.  Investigation and confirmation of this information was critical to impeaching Reid.
   Movant requested counsel subpoena Reid's other phone numbers.

b.  JH's
   Background investigation would have including other stalking and harassment victims as well as people who could testify that JH had a history of planting narcotics.  Investigation would have also shown JH assumed the identity of others.  Investigative reports also pertain to alleged assaults and other criminal and civil misconduct.

c.  MLO
   Background investigation would have confirmed extended contact with JH (MLO has not honest about this in previous testimony), prior false statements and opposed positions.  Examples include: while she testified she was unaware of Movant's address she was able to provide it and other extremely detailed information to investigators; she also provided income information to the court claiming it was accurate for the purpose of establishing financial support and provided the same documents to federal agents claiming they were fraudulent.  Withheld 302's would show she, and or those acting on her behalf, were the source of information pertaining to numerous investigations.  Evidence also exists that she was directly involved in assuming the identity of another and online harassment.

d.  Robert Lee
   Counsel failed to interview rebuttal witnesses that could testify that Lee's story was false.  Movant provided Counsel with names including Movant's actual workout partner and Lee's celly who would testify that Movant and Lee did not associate, they were near Movant constantly and never heard any of the statements Lee claims to have heard, that such statements would have been out of character and Lee did not work out with Movant.

e.  Attorney JW
   Counsel failed to walk across the street to the State Court and obtain a copy of an Affidavit that Attorney Witt executed during one of his professional visits with Movant in the St. Louis Count Jail. This affidavit shows Witt was acting as an Attorney for Movant.  In addition to the Affidavit itself the Notary and the Attorney Witt delivered the document to were available to testify.

of the title and bill of sale for the motor cycle Attorney Witt stole from Movant while Movant

---------------------------------------------------------------------------------------- *p12* ----

was incarcerated.  This document would go to Witt's character, credibility and motive to lie.

Counsel failed to interview rebuttal witness's (including the property manager and Witt's associates) who could attest that Witt represented himself as Movant's attorney and repeatedly entered Movant's loft.

Substantial evidence exists that Witt was steeling from Movant and other clients  (RED, TV, Bike, Money in Account)

Evidence exists that Attorney Witt was actively attempting to inform on and even entrap his law clients and associates. Investigation would have shown that the government withheld several investigative reports that were need to impeach Witt and his tactics.

f.  Counsel failed to obtain and familiarize itself with the prior statements and actions of prospective witnesses.  Court filings, transcripts of hearings, social media postings and recordings were available of numerous statements of witnesses.  (MLO, JH, KH, SP, RE, etc.)


2.  INTERVIEW
Counsel failed to interview and subpoena witnesses.

Specific examples include:

a.  Movant's employees, coworkers and a St. Louis County Police Officer would have testified that Movant's vehicle was parked in the rear of the building, directly contradicting government testimony.  They would have also testified that the 12/15/2008 arresting officer returned to Movant's office in an attempt to gain access to Movant's vehicle.  Testimony would have also shown that Movant was arrested on 12/15 inside his office without incident by an officer who was working in conjunction with the intelligence bureau.  This testimony would have impeached the government's story at the suppression hearing.

b.  MO would have stated that he did not speak with CS on the phone.  This testimony would not only have impeached CS's statement but would have made the government's timeline and story completely unfeasible.

c.  TH could have testified that he informed Movant RE was out of town before the incident.

e.  Eyewitnesses would have testified that the man in the poncho with the device was a light skinned black male. Eyewitnesses would have testified that Movant had cleared a photo line up.

f.  Witnesses were available to testify that they spoke with Movant during the time the government falsely claims defendant was in Clayton.  Movant provided counsel with specific information as to the identity of witnesses the location and substance of conversations.  This testimony would have been critical to destroying the government's case.

g.  JB would have indicated that Attorney Witt provided him with items* illegally removed from Movant's loft. This would have been valuable to impeach Witt.  This also would have impacted the credibility and tactics the government employed in the investigation.
    *One of these items would have cleared Movant in another case.  Without it Movant was forced to plead guilty.  The prosecution profited from withholding this evidence and failing to report its existence to the other court as it resulted in an increase in defendant's criminal history.

h.  Several individuals were available to testify that Witt maintained that he was Movant's attorney.

i.  Counsel failed to interview staff at the Ritz Carlton Hotel, area restaurants and shops to verify that they had turned over their security footage to law enforcement.


3.  TRIAL PREPARATION - EVIDENCE
Counsel failed to promptly or entirely acquire, examine and preserve evidence.

Examples include:

... .f Movant's credit card statements would show that he did not use a credit card at the Cheshire Inn as

------------------------------------------------------------------------------------ p.13 ---

Aaron Reid had testified.

b. An examination of Mr. Sanders whose DNA was found near the device could have shown a link to Aaron Reid.

c. An examination of the photographs taken by a property agent at the home on Ballas would shown, when compared to the search photos, that the scene had been tampered with.

d. An examination of the ATF in NY's video system should have been conducted to show that the system was operational. Counsel aided the government in making a record with no follow up, investigation or adversarial challenge.

e. An examination of the United Reservations System would have indicated that the trip to California was scheduled weeks in advance not at the last minute as the government contended.

f. No examination of the contents of the book the government planed to enter into evidence was made.
An examination would have shown substantial differences. The book should have also been dusted for prints and swabbed for DNA, as Movant requested. This would have indicated Movant did not have recent contact with the item and that others did.

h. Transcriptions of several audio recordings should have been made. Including recordings of MO, SP, KH, JH, etc as background and impeachment material.

i. Counsel should have obtain Officer Aaron Reid's training records. Reid's records, including his military training, would show that he had knowledge of destructive devices.

j. Evidence, including statements and records, was available that the government provided false and misleading info to prison officials to impact Movant's custody level and access to counsel. This relates directly to the credibility and tactics of government agents.

k. Counsel should have obtained evidence, including phone data, tactical meeting records, officer statements, and jail logs, pertaining to the illegal suppression of an arrest warrant by government agents. This also relates directly to the credibility and tactics of government agents.

l. By failing to take prompt action several records were not available including REJIS logs, phone records and files hidden by Attorney Witt.

m. Counsel failed to properly investigate and preserve other physical evidence including other devices employed by Reid and items stored by Reid. Movant provided counsel with specific information as to where and how potential evidence could be located.

n. Counsel failed to secure data pertaining to cell phone tower locations. This information would have been necessary to effectively cross examine government witness and establish an accurate timeline.

o. Counsel failed to acquire phone data pertaining to potential witnesses. This data was needed to verify who was where and communicating with who. Movant provided counsel with specific examples that counsel failed to obtain entirely or in a timely fashion.

p. Counsel failed to perform a background investigation of government witnesses and experts.


4.  TRIAL PREPARATION - MOTIONS
Specific examples of Motions counsel failed to research, prepare and file include:

a. Pretrial Motions including:
    i. Motion in Opposition to the Government's 404b Motion
    ii. Jury Instructions
    iii. Suppress Evidence - other searches - items not listed - "facts" not proven
    iv. Limine
    v. Dismiss - prosecutorial misconduct - perjured testimony

h  Motion to Compel Discovery

-------------------------------------------------------------------------------- p.14

c.  Subpoena(s) - Records and Witnesses

d.  Object to limited contact with and distance from client (impeded effective representation)

e.  New Bond Hearing - after state felonies were overturned - substantial change in circumstance

f.  Allow travel to identify evidence

g.  Access to Digital Evidence (No computer for 60+ days)

h.  Suppress
    i.  Ladue Stop - illegal search under Gant
    ii.  Ballas Search - No consent or warrant
    iii.  Briefcase - Map, searched years before warrant was issued

i.  Failed to Brief on Multiplicious - Count III conduct contained in other counts

j.  Access to interview witnesses

k.  Speedy Trial Violation

l.  Additional Funds for Investigation and Counsel - Counsel maintained that they were not being paid enough to do everything that needed to be done to effectively represent Movant.

m.  Pursue Movant's prior 2255s
    Witt Information
    Criminal History Score
    Expose related government misconduct

n.  Objection to Press Leaks - potentially tainting the jury pool

o.  Change of Venue

Absent counsel preparing pretrial Motions and Briefs Movant was unable to evaluate the likelihood of prevailing at trial. Counsel did not present an adversarial challenge.


5.  TRIAL PREPARATION - PROPER COURT ROOM ATTIRE
Counsel did not attempt to comply with Movant's repeated requests to have his measurements taken, clothing purchased and fitted.  Instead counsel diverted the funds it was holding for Movant's clothing.
Counsel's failure to assist Movant in obtaining proper court room attire was a clear indication to Movant that counsel did not intend to proceed to trial.


6.  INVESTIGATION
a.  Counsel failed to investigate the background of witnesses.

b.  Counsel failed to investigate the government's experts.

c.  Counsel failed to investigate which witness were able to testify to what facts.

d.  Counsel failed to investigate Movant's competency.

*p15*

----------------------------------------------------------------------------------------------------

B.   CONSULT WITH AND HIRE EXPERTS
The resources of scientific laborites and experts were required to evaluate certain evidence.
Specific examples include:

a. An expert in phone data triangulation/ analysis was needed to determine where specific phones were at specific times.
This analysis and testimony would have been critical as it entirely disproves the government's case.
   Careful analysis would prove that Movant did not meet Reid at the gas station, contrary to Reid's testimony.
   That Scott did not meet Reid at the gas station.
   Further analysis would show a pattern of highly suspicious movement by Reid, which would be important for impeachment.
Analysis would also show that Movant was not at Reid's home for the extended period of needed to create a device.

b. An expert capable of testifying to travel times in the St. Louis area would have been critical.
This expert would testify that based on realistic drive times and road conditions the government's theory was completely
unfeasible.

c. An expert in computer forensics was necessary.
This expert would have been able to prove that Movant's computer was accessed while he was in custody and before a warrant
was issued.
This expert could have recovered important audio files that appear to have been erased.  These files are damaging to the
credibility of government witnesses.
This expert could have also distinguished between IP addresses used by Reid and Movant, showing who searched what.

d. An expert in exhibit preparation was also needed.
This expert could have created maps, graphics, animations and videos to counter the government's exhibits and effectively
emphasize Movant's points.

e. A photographer was needed.  This expert would have been able to provide important images needed for exhibits such as:
video camera locations and angles,
restaurants and hotels as there are serious discrepancies as to where who went,
line of sight pertaining to eyewitnesses,
meeting places there are serious discrepancies in witness stories pertaining to gas stations, restaurants and car dealerships
Movant's office parking lot

f.  A DNA expert was needed to testify to the difference between exact matches and partial matches.  The prosecution was
misrepresenting evidence.  A profile is not a nuclear match, saying "is consistent with" is different than stating they are the
same, "can not be excluded as the source" is not confirming the source, there is a probability of selecting an unrelated
individual.  The expert could elaborate on the government only using 5 of 15 loci in its statistical calculation.  Independent
testing could have netted completely different results.

g. An explosives expert was needed to analyze the bomb debris, independently verify the government's conclusions, determine
the skill level needed to create such a devise, determine the capabilities of the device and look for inconsistencies in the
government's interpretation.  This expert could also testify that the devise was not capable of damaging or destroying the
parking garage.

h. An expert in audio video systems was needed to challenge the government's conclusions based on the frame rate of the
video.  The audio video expert would also testify that turning down an external speaker on the ATF's recording system would
not shut off the audio.

i. An expert should have also been employed to analyze Reid's lie detector test.

j. An expert was needed to independently authenticate audio and video that the government intended to introduce as evidence.
                    ·  ·  ·  ·  ·  authenticate recordings movant could enter as rebuttal or impeachment evidence.

-------------------------------------------------------------------------------- *p16*----

k.  A medical professional would have testified that Movant had nerve damage in his arm.  This would indicate that it was unlikely that Movant could successfully manufacture a devise.
A psychological examination of Movant could have also been helpful.
A medical professional could also have provided testimony about a mental condition pertaining to one of the government's witnesses.

l.  The services of a court reporter were needed to transcribe recordings, such as witness statements for background and impeachment.

m.  An engineer would have testified that there was no actual damage or destruction of the parking garage.

N.  An expert in law enforcement procedures would have testified that proper procedure dictates you execute an arrest outside of a motor vehicle in a vacant parking lot.  This contradicts testimony at the suppression hearing.
An expert in law enforcement interview and interrogation techniques would testify that it was improper for law enforcement to first supply Reid with information then have him recite the information as "his statement".

------------------------------------------------------------------------------------ p17

C.   FAILURE TO ADVISE
1.  Counsel failed to advise Movant as to the multiplicious elements of the indictment, especially counts II and III as all the elements of one was contained in the other.
2.  Counsel failed to advise Movant pertaining to the elements of count II and the evidence needed to constitute proof, specifically intent, malice, damage and destruction.
3.  Counsel failed to advise movant pertaining to counts IV and V being foreclosed by his earlier plea.
4.  Counsel failed to properly advise Movant in reference to appealing.
Had Movant been properly advised by counsel, Movant would not have entered the plea.


D.   SPEECH/ TESTIMONY RELATED
1.  Counsel induced Movant to redact and edit his comments to the Court.
2.  Counsel deprived Movant, at the change of plea hearing, of his ability to inform the Court of the nature of his belief that he was not receiving effective representation.
3.  Counsel deprived Movant of his right to testify on his own behalf by refusing to call Movant as a witness at the suppression hearing and refusing to support his request to testify at trial.  Without counsel's support Movant would be a) unprepared, b) unable to call himself to the stand, and c)unable to ask himself questions.
4.  Counsel deprived Movant of his right to cross examine witnesses, as counsel was unprepared to question witnesses effectively.  Movant specifically requested that he be allowed to cross examine witnesses and counsel stated that right only applies through them.  If counsel is unprepared the right is constructively denied.


E.   SENTENCING
1.  Counsel failed to dispose of pending charges listed in the PSR.
2.  Counsel did not move the Court for credit on related cases and uncredited jail time.
3.  Counsel lost their notes pertaining to issues with the PSR and was therefore unable to comply with all of the corrections necessary in a timely fashion.
4.  Counsel grossly miscalculated Movant's custody level.  This was an important issue in contemplation of the plea.
5.  Counsel ineffectiveness resulted in higher custody level.


F.   ADVERSARIAL CHALLENGE
Counsel failed to subject the prosecution to an adversarial challenge.
As referenced through out this motion, counsel was willing to accept the governments versions of the facts including locations, drive times, the type and nature of the device.
At times counsel appeared to be actually aiding the government.  Counsel allowed the government to make an unchallenged record explaining why they did not have audio from Reid's interview.  Counsel alerted the government as to "mistakes" or discrepancies in their scientific reports (which were discovered by Movant) and therefore gave the prosecution the opportunity to "explain" or correct them instead of challenging them on cross examination.


G.   INDUCED PLEA
Counsel, by and through their words and conduct, induced Movant to plead guilty even though Movant adamantly maintained his innocence to counsel.


H.   FAILURE TO OBTAIN EXCULPATORY EVIDENCE
Counsel failed to obtain the impeachment and exculpatory evidence referenced throughout this motion.  Counsels' failure eliminated their ability to be an effective advocate for their client, prepare for trial and participate in plea negotiations.

---------------------------------------------------------------------------------- *p.18* -----

GROUND TWO
INEFFECTIVE ASSISTANCE OF COUNSEL


### IV INEFFECTIVE ASSISTANCE OF COUNSEL CONCLUSION

For the foregoing reasons Movant was denied effective assistance of counsel.  Counsel's performance fell below an objective standard of reasonableness.  Counsel's errors were so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, resulting in a fundamental breakdown in the attorney client relationship.  Were it not for counsel's unprofessional errors the result of the proceedings would have been different.  There is a reasonable probability that, but for counsel's errors, Movant would not have pleaded guilty and would have insisted on going to trial.

---------------------------------------------------------------------------------------- p. 19 --

GROUND THREE
JURISDICTION
The Court lacked jurisdiction to accept the guilty plea.

Examples include:
A.  Counts IV and V were bared by defendant's earlier plea.

B.  The Court was aware that defendant believed Counsel's representation fell below a constitutionally acceptable standard and defendant believed there to be prosecutorial misconduct.

C.  Count II - lacks factual basis for plea.  Damage or destruction to the parking garage neither occurred or was attempted.

D.  A review of the record indicates the indictment on file is unsigned.  Therefore it is not a valid instrument and the court lacked jurisdiction to accept the plea.

GROUND FOUR
ACTUAL INNOCENCE
Movant contends that he is actually innocent.

Facts supporting this allegation can be found throughout this motion, and include evidence and witnesses that show movant was not in Clayton at the time the device was delivered.

In reference to Count II neither damage or destruction occurred or attempted, nor was the device capable of damaging or destroying.

GROUND FIVE
PLEA INDUCED
The conviction was obtained by a plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and consequences of the plea.

Facts supporting this allegation can be found throughout this motion, and include the fact that counsel was denied the ability to further his claim of ineffective assistance at the change of plea hearing.

GROUND SIX
CUMULATIVE EFFECT
The accumulation of errors in this case violated Movant's right to due process.

Facts supporting this allegation can be found throughout this motion.

*p20*

---

GROUND SEVEN
NEWLY DISCOVERED EVIDENCE
Newly discovered evidence exists, including but not limited to, evidence directly pertaining to Attorney Witt's credibility and testimony.

The court's findings during the suppression hearing were largely bases on Witt's testimony.

Examples include:
    Audio recordings where Witt is selling his testimony against Movant in exchange for favors for another client and financial compensation.
    Witt's indictment in federal court.
    News stories and witnesses indicating Witt illegally removed items from Movant's loft.

Based on the newly discovered evidence a reasonable fact finder would conclude Witt lacked credibility.

GROUND EIGHT
SENTENCING ISSUES
A.  The District Court should have granted credit against Movant's prior federal sentence.

B.  Time Credit should have been issued for uncredited jail time.

C.  Movant was eligible for Hard Time Credit for time spent above his custody level.

D.  A sentencing disparity exists.

GROUND NINE
GOVERNMENT VIOLATED PLEA
The government violated the plea agreement by failing to supply Movant with a copy of his hard drive, as agreed upon at the change of plea hearing.

Without the government's assurance and agreement to provide Movant with a copy of his hard drive Movant would not have signed the plea.

p.21

## CONCLUSION

The aforementioned grounds individually and viewed as a whole caused Movant to plead guilty and prejudiced him.  Were it not for the aforementioned Movant would have proceeded to trial.  Movant is actually innocent and it would be a complete miscarriage of justice not to issue a writ of habeas corpus.

## SUPPORTING RECORD

This Motion is based on this document, Movant's Motion to Vacate, Set Aside, or Correct the Judgment or Sentence, the supporting Affidavits and Exhibits as well as all of the pleadings and papers filed in this action, and whatever arguments and evidence are allowed at the hearing of Movant's Motion.

Done this 8th day of October, 2014.

Respectfully submitted,

Milton Ohlsen, Movant
Fed. Reg. No.: 08895-045
FCI Williamsburg
PO Box
Salters, SC

## CERTIFICATE OF SERVICE

The foregoing was mailed to the below listed addresses by placing it in the prison mail first class postage paid.

US District Court
Clerk of Courts
111 South 10th St
St. Louis, MO 63102

⇔08895-045⇔
Office Of The A U S A
111 S 10TH ST
Saint Louis, MO 63102
United States

Done this 8th day of October, 2014.

--------------------------------------------------------------------------------

AFFIDAVIT

I, Milton Ohlsen , AFFIANT, being of legal age and sound mind do hereby swear that the facts attested to in the foregoing Addendum are true, correct, and complete to the best of my firsthand knowledge and belief.

Attested and sworn this 2ⁿᵈ day of October, 2014.

_____
Milton Ohlsen, Affiant

, Case Manager.
Authorized by the Act of July 7,
1955, as amended to administer
oaths (18 USC 4004).