UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MILTON OHLSEN,                          )
                                        )
        Movant,                         )
                                        )
    vs.                                 )        Case No. 4:14 CV 01749 ERW
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        Respondent.                     )

## MEMORANDUM AND ORDER

This matter comes before the Court on Milton Ohlsen's Motion under 28 U.S.C. § 2255

to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 1].

## I.    BACKGROUND AND PROCEDURAL HISTORY

On October 15, 2008, Milton Ohlsen ("Ohlsen") transported an explosive device

containing gunpowder to a parking garage at 190 Carondelet, Clayton, Missouri.[1] Criminal

Docket (CD)[2] ECF No. 174 at 3. Ohlsen hid the explosive device in a gift basket and placed it

next to a vehicle he incorrectly believed belonged to Richard Eisen, his ex-wife's divorce

attorney. CD ECF No. 174 at 4. On October 16, 2008, the device exploded and caused

permanent bodily injury to John Gillis, when he moved the basket away from his vehicle. CD

ECF No. 174 at 4. The explosion caused damage to Mr. Gillis's vehicle and the parking garage.

CD ECF No. 174 at 4.

On June 30, 2011, Ohlsen was indicted on one count of Transportation or Receipt of

Explosive with Intent to Injure and Causing Physical Injury, in violation of 18 U.S.C. § 844(d)

(Count I), one count of Malicious Use of an Explosive Device, in violation of 18 U.S.C. § 844(i)

---

[1] These facts are taken from Ohlsen's plea agreement.
[2] The underlying criminal conviction has a case number of 4:11 CR 00284 ERW.

(Count II), one count of Use of Destructive Device to Commit a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count III), one count of Felon in Possession of an Explosive, in violation of 18 U.S.C. § 842(i) (Count IV), and one count of Felon in Possession of an Unregistered Destructive Device, in violation of 26 U.S.C. § 5681(d) (Count V). CD ECF No. 2.

Ohlsen, through his counsel, filed Motions to Dismiss the Indictment and Motions to Suppress. CD ECF No. 41, 47, 48, 102. Evidentiary hearings were held before Magistrate Judge Nannette A. Baker on June 29, 2012, and July 18, 2012. CD ECF No. 123, 132. Judge Baker denied Ohlsen's Motions. CD ECF No. 160, 163.

On September 11, 2012, Ohlsen pled guilty to Counts I, II, IV, and V. CD ECF No. 173, 174. Count III was dismissed. On January 30, 2013, the District Court sentenced Ohlsen to twenty years in prison pursuant to the terms of the plea agreement. CD ECF No. 189. As part of his plea agreement, Ohlsen waived his right to appeal. CD ECF No. 174 at 7-8. Despite his waiver, Ohlsen filed a direct appeal on February 14, 2013. CD ECF No. 192. On July 12, 2013, Ohlsen withdrew his appeal and the Court of Appeals granted the Government's motion to dismiss the appeal. CD ECF No. 205. Ohlsen filed the current motion on October 14, 2014.

## II.    LEGAL STANDARD

A federal prisoner who seeks relief from a sentence on grounds "the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). To obtain relief under § 2255, the movant must establish a violation constituting "a fundamental defect which inherently results in the miscarriage of justice." *United States v. Gomez*, 326 F.3d

971, 974 (8th Cir. 2003) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)). "Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on [§ 2255]," and the Eighth Circuit has only deviated from that general rule in cases involving convincing new evidence of actual innocence or similarly extraordinary circumstances. *See United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001).

Claims brought under § 2255 may also be limited by procedural default. A movant "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994) (citing *Bedford v. United States*, 975 F.2d 301, 313 (7th Cir. 1992)). Claims, including those concerning constitutional or jurisdictional issues, unraised on direct appeal cannot be subsequently raised in a § 2255 motion unless the movant can establish "(1) cause for the default and actual prejudice or (2) actual innocence." *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)).

If a movant is not procedurally barred from bringing a § 2255 motion, the Court must hold an evidentiary hearing to consider claims made therein "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw v. United States,* 24 F.3d 1040, 1043 (8th Cir. 1994). Thus, a movant is entitled to an evidentiary hearing as long as "the facts alleged, if true, would entitle [the movant] to relief." *Payne v. United States,* 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). A court may dismiss a claim without an evidentiary hearing, in contrast, "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)).

## III.    DISCUSSION

Ohlsen's Motion asserts numerous grounds for relief including prosecutorial misconduct, ineffective assistance of counsel, the Court's lack of jurisdiction to accept the guilty plea, actual innocence, involuntary guilty plea, newly discovered evidence, mistakes in sentencing, and the Government violated the plea agreement. The Court will address each claim as follows.

### 1.    *Claims of Prosecutorial Misconduct*[3]

Ohlsen's first category of allegations is prosecutorial misconduct for the failure to disclose exculpatory evidence to the Court, the grand jury, and Ohlsen. ECF No. 1-1. Ohlsen alleges the prosecution failed to disclose various video and audio recordings and investigative reports and records.

In *Brady v. Maryland*, the Supreme Court held suppression of favorable evidence to the accused when requested, violates due process, if it is material to the guilt or punishment of the accused. 373 U.S. 83, 87 (1963). The Supreme Court's holding has since been expanded to include all exculpatory evidence, irrespective of whether it was requested by a defendant. *Stickler v. Greene*, 527 U.S. 263, 280-81 (1999). To establish a violation of due process due to prosecutorial misconduct, the accused must show (1) the prosecution suppressed evidence, (2) the evidence was favorable to the accused, and (3) the evidence was material to the accused's guilt or punishment. *Mandacina v. United States*, 328 F.3d 995, 1001 (8th Cir. 2003). Materiality requires the accused show "there is a reasonable probability that if the allegedly suppressed evidence had been disclosed at trial the result of the proceeding would have been different." *Id*. The focus is not whether the defendant would have received a different verdict, "but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of

---

[3] The Court uses headings and subheadings from Ohlsen's Motion simply for clarity of reference. The Court does not use these headings to suggest Ohlsen's claims are valid.

confidence." *United States v. Whitehill*, 532 F.3d 746, 753 (8th Cir. 2008) (citations omitted).

When the accused has pled guilty, he must show he would not have pled guilty and would have

insisted on going to trial if the evidence had not been suppressed. *Tran v. Lockhart*, 849 F.2d

1064, 1067 (8th Cir. 1988).

### A.    Withheld Video and Audio Recordings

Ohlsen alleges ten specific instances of prosecutorial misconduct in suppressing video

and audio recordings. ECF No. 1-1 at 4. The Court will address each individually.

### 1.    Ritz Video

Ohlsen alleges the prosecution withheld video evidence from the Ritz Carlton Hotel

("Ritz") showing Aaron Reid ("Reid")[4] did not enter the hotel on October 15, 2008. The

Government states it does not have any of this evidence and Ohlsen has not established the

Government does possess these recordings. ECF No. 5. Additionally, the Government argues

Ohlsen's claim is speculative and conclusory. Ohlsen asserts, in his Reply, he can produce

evidence showing the video did exist, the investigation's command center was located in the

Ritz-Carlton and members of the hotel's security were assigned to the investigation's command

team. ECF Nos. 24, 28, 29. Further, Ohlsen claims the Government preserved video from other

area businesses so it must have preserved the video from the Ritz.

Ohlsen must show the evidence was known to the Government to establish prosecutorial

misconduct and he has failed to do so. *United States v. Josleyn*, 206 F.3d 144, 154 (1st Cir.

2000). Simply asserting the Government must have these videos because it has videos from other

restaurants does not establish the Government actually has, or has ever had, possession of these

---

[4] Aaron Reid was with Ohlsen when he brought a package, containing the explosive device to the parking garage. Reid pled guilty to misprision of a felony and agreed he knew Ohlsen had planted the explosive device, failed to notify an authority, and told authorities he was not with Ohlsen on October 15, 2008, when in fact he was with Ohlsen. United States v. Aaron Reid, 4:11 CR 323 ERW, ECF No. 6.

videos. Ohlsen does not establish the Ritz-Carlton had any video to give to the Government. Further, he makes claims the security team at the Ritz-Carlton was part of the investigation's command team without providing any support for this assertion. Ohlsen must include specific facts to obtain an evidentiary hearing and he has failed to do so. He states he has evidence to prove there was a video but does not attach or describe this evidence to allow the Court to conclude it is anything but incredible. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985) ("A district court does not err by dismissing a claim based solely on vague, conclusory, or palpably incredible allegations or unsupported generalizations without holding an evidentiary hearing." (internal quotations omitted)).

Additionally, Ohlsen has failed to show the recordings are favorable to him beyond the mere conclusion it is impeachment evidence. "Mere speculation that materials may contain exculpatory evidence is not sufficient to sustain a *Brady* claim." *United States v. Wadlington*, 233 F.3d 1067, 1076 (8th Cir. 2000) (*quoting United States v. Van Brocklin*, 115 F.3d 587, 594 (8th Cir. 1997)). He repeatedly states this evidence would contradict Aaron Reid's grand jury testimony, but he does not state how it contradicts that testimony. The testimony presented before the grand jury is not in the record. Thus, the Court has no understanding as to what contradictions Ohlsen refers. To establish the evidence is material, he states this video undermines the Government's case entirely, but he does not allege specific facts to establish how this undermines the Government's case. Ohlsen makes conclusory statements without alleging specific facts. He has failed to establish any of the three requirements to show a due process violation on the basis of prosecutorial evidence. He has not established the Government suppressed the evidence, the evidence is favorable to him, or the evidence was material. This claim fails.

2.    Clayton Video

Ohlsen alleges the Government did not disclose "video footage showing Ohlsen was not with Reid in Clayton, Mo" on October 15, 2008. The Government states it does not have any of this evidence and Ohlsen has not established the Government does possess these recordings. Further, the Government asserts this claim is nonsensical because the Government certainly does not have video evidence documenting Ohlsen and Reid's locations throughout the entire day of October 15, 2008. Ohlsen asserts the Government has video from a florist and gas station. He states his apartment building has a video surveillance system, as do many of the businesses he frequented on that day. Ohlsen argues his position is not they have video of his location for the entire day but they have his phone records and purchase records to put together his location throughout the day. He states the government is well aware Ohlsen did not meet with Reid in Clayton on October 15, 2008, and this excluded evidence is exculpatory.

Ohlsen undermines his own claim with his argument. When the Government does not turn over exculpatory evidence, it has committed prosecutorial misconduct which may constitute a due process violation. Ohlsen's argument the Government knows he did not meet with Reid in Clayton does not assert there is a piece of evidence the Government should have turned over and did not. He states he does not think the Government has video of his location throughout the entire day. Ohlsen must show the evidence was known to the Government to establish prosecutorial misconduct and he has failed to do so.[5] *United States v. Josleyn*, 206 F.3d 144, 154 (1st Cir. 2000). Ohlsen comes to the conclusion the Government was aware he was not in Clayton because of his phone records and purchase records. These records were disclosed to

---

[5] Ohlsen also claims the Government must have this evidence because, in other bombing cases, the government is "able to show 'Home Depot video' of the suspect purchasing supplies." Just because evidence has been found in other cases does not mean similar evidence exists in this case. The relevancy of "Home Depot video" in other cases to Ohlsen's claim there is video footage showing he was not in Clayton is unpersuasive with the Court.

Ohlsen. ECF Nos. 5-1; 5-5; 5-29; 5-31. This is the extent of the Government's duty. Ohlsen has not alleged specific facts to establish prosecutorial misconduct to warrant an evidentiary hearing on this claim.

### 3. Restaurants

Ohlsen alleges the Government suppressed "video footage showing Reid did not enter the restaurant(s) in Clayton, Mo" on October 15, 2008. The Government states it does not have any of this evidence and Ohlsen has not established the Government does possess these recordings. ECF No. 5. Further, the Government argues it is not accountable for information known to a private party. Ohlsen asserts the Government's investigators examined the video.

Ohlsen must show the evidence was known to the Government to establish prosecutorial misconduct and he has failed to do so. *United States v. Josleyn*, 206 F.3d 144, 154 (1st Cir. 2000). Ohlsen has again failed to allege specific facts in support of his claim. He does not state which investigators examined the video or to which restaurants he is referring. Additionally, Ohlsen has failed to show the recordings are favorable to him beyond the mere conclusion it is impeachment evidence against Reid. "Mere speculation that materials may contain exculpatory evidence is not sufficient to sustain a *Brady* claim." *United States v. Wadlington*, 233 F.3d 1067, 1076 (8th Cir. 2000) (*quoting United States v. Van Brocklin*, 115 F.3d 587, 594 (8th Cir. 1997)). Ohlsen has not shown how evidence Reid did not go into a restaurant affects his guilt in this matter, beyond stating it would impeach Reid's grand jury testimony. Without more specifics showing the Government does possess this video and the video is favorable to Ohlsen and undermines the case built against him, Ohlsen has not shown there was prosecutorial misconduct. This claim will be denied.

### 4. Suspect Gait Video

Ohlsen alleges the Government suppressed "video evidence more clearly identifying the suspect and his gate." The Government states it produced all garage video footage in its possession to Ohlsen. According to the Government, the garage video shows the suspect entering the garage carrying a gift basket, and exiting the garage without the gift basket. Ohlsen claims the Government disclosed a highly edited compilation of footage from two different systems represented as one complete video and the footage of the suspect meeting with another individual was edited out of the disclosed disc. According to Ohlsen, footage of the suspect walking with a "duck footed" gait is missing.

The Government has provided four exhibits documenting the disclosure of this evidence to Ohlsen's defense counsel. In Exhibit 1, Eric Butts, Ohlsen's first attorney, acknowledged receipt of a DVD labeled "Parking Garage." ECF No. 5-1. Exhibit 2 is a letter from Assistant United States Attorney Carrie Costantin ("AUSA Costantin") to Mr. Butts and includes a list of the material previously provided to Mr. Butts including a DVD labeled "Parking Garage." ECF No. 5-2. Exhibit 3 is another letter from AUSA Costantin to Adam Fein, Ohlsen's subsequent attorney, stating a disk labeled "parking garage" has been enclosed. ECF No. 5-3. Lastly, Exhibit 4 is a letter from AUSA Costantin to Mr. Fein again stating a CD of the video files from the parking garage was enclosed. ECF No. 5-4. Video footage of the suspect in the parking garage was provided to defense counsel several times. Ohlsen's claim will be denied.

5.      Garage Video

Ohlsen alleges the Government suppressed "a garage video showing the suspect making a phone call." The Government asserts all video of the suspect in the parking garage was disclosed to Ohlsen including a video where the suspect places the basket containing the explosive on the ground for a few moments. According to the Government, his actions are not clearly visible

during this time and this is the time period when the Government believes he was making a phone call.

As stated previously, it is clear from the exhibits attached to the Government's response, all video of the parking garage was disclosed several times. Ohlsen asserts several clips from the video are missing, but these are clips he assumes exist without any evidence to suggest they actually exist. For instance, he asserts there should be a video clip of the suspect leaving the garage, or a clip when the first eyewitness spotted the suspect. There is nothing to suggest there is actually video evidence of these moments. Even if the video existed and was not disclosed, Ohlsen has not established this evidence is material. He asserts this information would have impeached Aaron Reid's testimony and shown facts which did not align with the Government's theory. However, these facts to which Ohlsen refers, the suspect's gait and the suspect making a phone call, are referenced in law enforcement reports and during Reid's interrogation video. The statements detectives made during Reid's interrogation were based on the video produced to Ohlsen. He knew this information before he pled guilty and could have used it to impeach, if he had chosen to proceed to trial. Therefore, the information, which he claims was material, was available to Ohlsen.

Additionally, Ohlsen attached images from what he states is the Government's "2 suspects" file which prove footage of the suspect meeting with another individual were edited out of the discovery disc. Even if this claim were true, Ohlsen fails to establish the materiality of this information. This claim will be denied.

6.      Reid Interrogations

Ohlsen alleges the Government withheld "Reid's interrogations, including the interview where he finally recites the story the government took to the grand jury." Ohlsen asserts the

recordings will show Reid was coached and provided with the facts by law enforcement. He also asserts the records will show Reid was offered other deals not disclosed to the defense. The Government states the recordings of Reid's interviews, polygraph examination, copies of his written statements, and a transcript of his grand jury testimony were produced to the defense. According to the Government, there was a malfunction of the audio recording of Reid's interview with law enforcement resulting in video of the interview but no audio. The Government claims it did not suppress the evidence and Ohlsen has not shown the recordings are favorable or material.

According to ATF Agent Michael Hungria, Reid was interviewed at the ATF White Plains, New York satellite office on March 3, 2011. CD ECF No. 139 at 172.[6] Agent Hungria testified the interview room was capable of video and audio recording and he was told by local agents to turn a switch on in the room to activate the recording. CD ECF No. 139 at 173. Agent Hungria testified he activated the video and audio and only after returning to St. Louis did he receive notification from the White Plains office there was an issue with the audio recording. Agent Hungria testified he spoke with an IT employee for the office who explained the audio in the viewing room had been unknowingly turned off which also turns off the audio on the recording. CD ECF No. 139 at 174. The IT employee further explained agents often turned the audio off so the noise from the interview does not disrupt the viewing room without realizing it also controls the volume on the recording. CD ECF No. 139 at 174. Agent Hungria testified he believed he had properly activated the audio at the time of the interview. CD ECF No. 139 at 174-175.

The Government disclosed these recordings to Ohlsen on February 2, 2012. ECF No. 5-5

---

[6] CD ECF No. 139 is the transcript from the evidentiary hearing held on June 29, 2012, and July 18, 2012, before Magistrate Judge Nannette A. Baker.

(letter from AUSA Costantin to Adam Fein including a CD containing the interview of Reid). Agent Hungria did not intentionally turn off the audio of the interview with Reid, according to his testimony in the evidentiary hearing. The Government also disclosed written statements from Reid, grand jury testimony of Reid, DVDs of Reid's interview on October 20, 2009, and a CD containing video of Reid's polygraph examination. ECF Nos. 5-1; 5-5; 5-6. Although Ohlsen may wish to believe the malfunction at the New York ATF office was more than a mistake, he was given an opportunity to address the issue and question the agent at the evidentiary hearing. Ohlsen has failed to show other recordings exist of Reid's interviews which have not been disclosed.

Ohlsen attached to his reply, transcripts he has made from a video of Reid's interrogation which he claims proves there were other deals. First, the Court notes, contrary to the initial claim video evidence of this interrogation was not disclosed by the Government, it is clear videos of Reid's interrogations were disclosed because Ohlsen viewed these videos to make the transcript he attached to his reply. Second, it is clear from Ohlsen's transcript, there are no "secret" deals as the law enforcement agent talks about possible other charges and the decision not to bring charges in the video which was disclosed to Ohlsen. There is no evidence of another deal. Ohlsen attaches another transcript of a video from Reid's interview which he claims is evidence Reid was provided with facts and pressured to incriminate Ohlsen. However, the transcript Ohlsen provides indicates the law enforcement officer is questioning Reid about holes in his story and trying to get Reid to clarify areas which do not make sense. It in no way indicates law enforcement was providing Reid with facts or pressuring him to incriminate Ohlsen. The recordings as well as other evidence of Reid's interviews were disclosed to Ohlsen prior to his guilty plea. This claim will be denied.

7.      Witt's Jail Call Recordings

Ohlsen alleges the Government suppressed evidence of "recordings of Movant's jail calls with Attorney Jeff Witt" which show Jeffrey Witt ("Witt") was Ohlsen's attorney. Ohlsen also alleges internal prosecution documents and opinions support his theory there were legal issues with Witt's representation of Ohlsen withheld. The Government asserts all but two discs of jail calls were disclosed to defense counsel. According to the Government, over 100 discs of phone calls were reviewed by AUSA Allison Behrens and were disclosed.[7] The Government states the two remaining overlooked discs were reviewed for this motion and consisted of Ohlsen leaving messages for Witt. The Government contends Ohlsen has failed to show the calls were favorable to him or were material.

The Government has provided seven letters documenting the production of discs containing jail phone calls between Witt and Ohlsen to Ohlsen's counsel. ECF No. 5-8, 5-9, 5-10, 5-11, 5-12, 5-13, 5-14.  The Government also provided transcripts of the calls from the two discs not disclosed to defense counsel to the Court. ECF No. 5-20, 5-21. The Court reviewed the transcripts and has determined the recordings contain no substantive evidence. They are messages left by Ohlsen either to Witt's receptionist or answering machine. Although two discs were not disclosed to defense counsel, Ohlsen has failed to show the recordings were material.

Ohlsen asserts he is in the unique position to know there are missing phone calls and without these phone calls, he is without the power to stop Witt from testifying falsely. As detailed below, Witt was not going to be called as a witness by the Government; thus, Ohlsen fails to establish how proving Witt's testimony is false is material to this matter. Additionally, just because Ohlsen believes there are additional recordings of phone calls not disclosed does not

_____

[7] Because the jail calls contained potential attorney-client communications, AUSA Behrens reviewed the calls and provided only those recordings without attorney-client communications to AUSA Constantin. Defense counsel was provided with all of the recordings, regardless of the presence of attorney-client communications.

mean the Government actually has those recordings. The Government's exhibits establish the recorded phone calls were properly disclosed to Ohlsen and those not disclosed, and reviewed by the Court, were not material. This claim will be denied.

8.      Witt Recording

Ohlsen alleges the Government suppressed recordings "Witt claimed to have a special relationship with law enforcement officials and was selling his testimony against Movant." The Government claims it is unaware of the recordings Ohlsen references. The Government states it disclosed the discs of jail calls, as explained *supra*, and it disclosed audio and video from a meeting with Witt and Reid as well as recordings of other conversations between Ohlsen and others. ECF No. 5-15, 5-16. Additionally, the Government states it had informed Ohlsen's counsel the Government would not call Witt as a witness. ECF No. 5-17. Ohlsen claims the Government dropped Witt as a witness because they had audio recordings and statements confirming Witt was selling his testimony as it pertained to Ohlsen. Ohlsen also claims he has one of the recordings.

It is clear from the exhibits, numerous recordings of conversations between Ohlsen and Witt, Reid and Witt, and recordings of conversations of Ohlsen with others were provided to defense counsel. Ohlsen fails to give any specifics as to what is contained on the alleged recording he has obtained, to whom Witt is selling his testimony, or when this occurred. Additionally, Ohlsen fails to establish how this information is material as the Government informed Ohlsen's counsel Witt would not be called to testify; thus, the value of such recordings as impeachment evidence was nullified.[8] Ohlsen's claims will be denied.

9.      Recordings of Witt's Jail Visits

---

[8] Ohlsen claims the Government dropped Mr. Witt as a witness after using his testimony at the evidentiary hearing. Ohlsen fails to mention Mr. Witt was called as a witness at the evidentiary hearing by his own counsel, not the Government.

Ohlsen alleges the Government suppressed recordings of Witt's jail visits with Ohlsen. He claims the Government gave Ohlsen a cell phone that contained a photograph of an orange motorcycle. The Government states it does not have any of this evidence and Ohlsen has not established the Government does possess these recordings. ECF No. 5. The Government also argues Ohlsen has not established these recordings are favorable or material to him.

Ohlsen must show the evidence was known to the Government to establish prosecutorial misconduct and he has failed to do so. *United States v. Josleyn*, 206 F.3d 144, 154 (1st Cir. 2000). Additionally, Ohlsen has failed to show the recordings are favorable to him beyond the mere conclusion it impeaches the integrity of the investigation. "Mere speculation that materials may contain exculpatory evidence is not sufficient to sustain a *Brady* claim." *United States v. Wadlington*, 233 F.3d 1067, 1076 (8th Cir. 2000) (*quoting United States v. Van Brocklin*, 115 F.3d 587, 594 (8th Cir. 1997)). Ohlsen has not alleged any of the evidence on these alleged recordings is exculpatory, as required for a *Brady* claim. This claim will be denied.

10.     Danielle Frazier

Lastly, Ohlsen alleges, the Government suppressed "several of DF's text messages." The Government believes DF refers to Danielle Frazier who contacted St. Louis County Police with information about the bombing and sent text messages to a detective's department-issued cell phone. The Government states these text messages were produced to Mr. Fein, Ohlsen's attorney. The Government has provided Exhibit 18, a letter from AUSA Costantin to Mr. Fein, which states a disc is enclosed with the messages from Danielle Frazier. These text messages were disclosed to Ohlsen.

Ohlsen lists the following facts in support of his claim there are missing text messages: 1) Frazier did not know Ohlsen; 2) Frazier implicated Reid to investigators; 3) Frazier was being

paid to implicate Reid; 4) Frazier made statements about being in danger, Reid would hurt her, and Reid planned the bombing; 5) the Government's involvement with Frazier goes to Reid's motive to implicate Ohlsen; 6) if Reid had not implicated Ohlsen, Frazier was going to implicate Reid; 7) Frazier was a key prosecution witness; and 8) Frazier's claim that Reid made confessions to her would have implicated Reid, not Ohlsen.

The Court does not understand why Ohlsen is stating these facts as he has not included any specifics as to what these missing text messages might have said to support these facts. He has not shown the existence of other text messages which were not disclosed to him or the favorability of such text messages. This claim will be denied.

Ohlsen has failed to show the Government suppressed video and audio recordings or that such recordings were favorable or material. Ohlsen's motion in regards to prosecutorial misconduct for failure to disclose audio and video recordings will be denied.

B.      Withheld Investigative Reports/Records

Next, Ohlsen claims prosecutorial misconduct because the Government allegedly withheld investigative reports and records in regards to fourteen different categories of reports. The Court addresses each claim as follows.

1.      Records and Reports Related to Reid

Ohlsen alleges the Government suppressed two different reports related to Reid. The first concerns "statements from other officers that Officer Reid claimed to have traveled out of town to pick up explosives prior to" October 15, 2008. The Government states it does not possess and is not aware of any such statements or reports. The Government also asserts Ohlsen has not established this evidence is favorable, because only Ohlsen had a motive to harm Richard Eisen, his ex-wife's attorney, not Reid.

Ohlsen attaches an audio transcript of an interview with Reid which he claims references statements made by other police officers regarding a trip out of town to pick up explosives. There is no indication these statements were actually made by police officers. Further, Ohlsen had possession of this audio which states police officers told the investigators they heard Reid had gone on a trip to purchase explosives. If this evidence existed separately from the audio recording disclosed to Ohlsen, it would indicate Reid had a greater hand in the bombing, but it does not negate Ohlsen's guilt or overcome his guilty plea. Ohlsen assumes these statements were actually made and that these statements are producible in some other form, such as a report. Ohlsen fails to show these are anything more than assumptions made by him. He claims he can introduce independent confirmation of these statements made by other police officers but does not include any information as to what this independent confirmation would be. Ohlsen's claim fails.

The second report Ohlsen alleges the Government suppressed is a "report and evidence showing Reid and Ohlsen were together in Clayton Mo" on October 17, 2008, and not October 15, 2008. The Government claims it does not possess and is not aware of any such statements or reports. In Reid's interview, he told investigators he went to Clayton with Ohlsen to look at hotels after the bombing. This evidence was disclosed to Ohlsen. Reid also provided ample evidence to investigators of their movements on October 15, 2008, all of which was provided to Ohlsen in discovery. Additionally, records showing the location of Reid's phone on October 15, 2008, were produced to Ohlsen. ECF No. 31-1. Ohlsen has failed to specify what evidence was not disclosed to him and has failed to establish any evidence exists showing Reid and Ohlsen were not together in Clayton on October 15, 2008. Further, Ohlsen has failed to explain how he and Reid being together on October 17, 2008, is material. Therefore, his claim on this point will

be denied.

2. Task Force Documents

Ohlsen alleges "taskforce documents show the government engaged in criminal conduct." Ohlsen claims the Government violated the law in its duty to execute an arrest warrant and it interfered with other law enforcement duties. Ohlsen contends these documents call into question the investigation which could have been used to impeach witnesses. Further, Ohlsen asserts these documents add validity to his claim Witt was working with the Government to plant evidence on Ohlsen at the time of his arrest. The Government states it does not possess and has no knowledge of such documents.

It is unclear as to what documents Ohlsen refers. Several police department reports, evidence analysis reports, affidavits, search warrants, transcripts, and other statements were disclosed to Ohlsen. If any other documents exist, Ohlsen has failed to show the Government is in possession of such documents. In his Reply, Ohlsen states there was a taskforce briefing pertaining to the execution of his arrest and no documents pertaining to this briefing were disclosed. Ohlsen then claims investigating agents violated the law when Ohlsen was released from St. Louis County Jail and St. Louis City Jail while there was an active warrant for his arrest. He claims the purpose of this was to arrest him when he was in possession of property Witt was attempting to place in his possession.

Ohlsen's claim assumes there are documents which exist from the task force briefing regarding his arrest. This is an incorrect assumption. The law enforcement officers involved in the arrest of Ohlsen testified a short briefing was held to coordinate between the agencies regarding Ohlsen's arrest. CD ECF No. 139, pgs. 144-46. There is nothing to indicate in their testimony any documents were produced for the briefing or as a result of the briefing.

Additionally, Ohlsen has failed to establish how these documents may be favorable or material. He claims officers at the St. Louis County and St. Louis City jail violated Missouri laws when they released him from the jails even though he had a pending warrant. The law enforcement officers involved in Ohlsen's arrest testified the federal arrest warrant was not entered into the National Crime Information Center. CD ECF No. 139, pg. 101. Therefore, the officers at the St. Louis County and St. Louis City jail would not have known to hold him due to an arrest warrant. The agents further testified the plan was to arrest him as soon as he departed the jail. CD ECF No. 139, pgs. 101-102, 121, 128, 133, 142. This plan went awry when Ohlsen was picked up by someone upon exiting the jail. *Id*. Ohlsen's claim there are task force documents which were not disclosed is purely speculative and fails as a result. There is nothing to show such documents exist. He also has not shown how these documents are favorable or material to him. His claim will be denied.

3.      Arrest Report

Ohlsen alleges the Government suppressed a police report about his December 15, 2008, arrest until after the evidentiary hearing on his motions to suppress evidence. Ohlsen further contends the arresting officer could have testified at the hearing "that he was in contact with the intelligence bureau at the time of the arrest, apprehended Movant alone without incident inside his office, Movant's vehicle was parked in the rear of the building and he was instructed to return to the office where he attempted to gain access to the vehicle and interviewed Movant's staff." Ohlsen argues this testimony would have contradicted and impeached other testimony at the hearing. The Government states Ohlsen was arrested on December 15, 2008, on state theft and assault charges and then again on December 17, 2008, on federal charges. According to the Government, no items relevant to the bombing were seized on December 15th. Further, the

Government states no testimony was presented during the suppression hearing about the arrest on December 15th. The Government claims the suppression hearing concerned his arrest on December 17th and the evidence seized as a result of a search of his vehicle which revealed items related to the bombing. Thus, the Government claims any information about the December 15th arrest has no relation to the denial of Ohlsen's motions to suppress.

Exhibit 19 to the Government's Response is the St. Louis County police report for Ohlsen's arrest on December 15th. ECF No. 5-19. The report states Ohlsen was arrested on stealing and assault charges and no property was taken. A review of the transcript from the suppression hearing reveals the focus of the hearing was on the December 17th arrest, not the December 15th arrest. CD ECF No. 139, 140. Although the arrest on December 15th was mentioned several times throughout the hearing, it was only to explain why Ohlsen was detained in the St. Louis City Justice Center prior to being arrested on December 17th. There is no indication from any of the law enforcement officers who testified at the hearing they had any contact with the officers who conducted the arrest on December 15th. In fact, Ohlsen's counsel questioned several witnesses about how they learned Ohlsen was held in the City Justice Center and not a single witnessed stated they had spoken with the arresting officers from the December 15th arrest. The Court is unable to discern from Ohlsen's allegations how the testimony would have impeached the officers who did testify as they were not involved in the December 15th arrest and this arrest had no impact on the December 17th arrest. After reviewing the testimony from the suppression hearing and the arrest report at issue, the Court finds the report does not contain anything favorable or material to Ohlsen as to require its production before the suppression hearing. Ohlsen's claim fails.

4.      Warrants and Other Records

Ohlsen alleges the Government suppressed "warrants and other records pertaining to other suspects." The Government claims it is unaware of and does not possess any such material. Ohlsen asserts there was a warrant for Aaron Reid issued on February 18, 2011, which was not disclosed. Ohlsen attaches Exhibit K to his Reply to establish there were warrants and records of other suspects. The document Ohlsen has attached as proof records were not disclosed was disclosed to him. It is St. Louis County Police Department Investigative Report 8-58380, Supplements 22 and 23. Ohlsen's attorney acknowledged receipt of this report on July 18, 2011. ECF No. 5-1, pg. 3. Ohlsen's claim fails.

5.     Witt Related

Ohlsen next alleges the Government suppressed thirteen pieces of evidence concerning his relationship with Witt. The Government asserts all of Ohlsen's claims in regards to this evidence have been litigated and rejected. According to the Government, Judge Baker found Ohlsen had failed to establish a right to attorney-client privilege and Witt did not disclose any information in violation of the privilege. Additionally, the Government states this same argument was raised in Ohlsen's § 2255 motions on his fraud and weapons convictions before Judge Henry Autrey and it was rejected.[9] Judge Autrey held there was no breach of an attorney client relationship between Witt and Ohlsen as Witt was not representing Ohlsen on any of the criminal charges. The Court addresses each of Ohlsen's allegations as follows.

First, Ohlsen claims the Government suppressed "reports confirming Witt and Ohlsen maintained a professional relationship." The Government asserts it has not withheld any reports

---

[9] Ohlsen pled guilty to violating 18 U.S.C. § 922(g)(1) and 924(a)(2), felon in possession of firearms or bullets, in Case number 4:08CR00710 HEA. Ohlsen pled guilty to violating 18 U.S.C. § 2 and 1344(1), (2), bank fraud, in Case number 4:09CR00114 HEA. Ohlsen filed a Motion under 28 U.S.C. § 2255 in Case number 4:10CV1906 HEA, contesting his felon in possession conviction and in Case number 4:10CV1907 HEA, contesting his bank fraud conviction. Hearings were held on both motions on November 27, 2012, and November 29, 2012, before Judge Autrey.

supposedly confirming a professional relationship between Ohlsen and Witt, and Ohlsen has not shown such reports exists or how these reports are favorable or material.

It is unclear from Ohlsen's motion the type of relationship to which Ohlsen refers. If Ohlsen refers to an attorney-client relationship between Ohlsen and Witt, numerous jail phone calls, reports, and other documents have been disclosed which possibly relate to such a relationship. Additionally, Witt testified at the suppression hearing as to the relationship. If any other reports exist besides those already disclosed, Ohlsen has not shown the Government is in possession of such reports. If Ohlsen refers to reports of a different professional relationship between him and Witt, he has failed to explain the relationship or the documents that exist regarding this relationship. It is impossible for the Court to determine if the materials are favorable or material when Ohlsen has failed to describe the documents. Additionally, any relationship Ohlsen would have had, he had knowledge of the relationship as one of the parties to the relationship. Ohlsen's claim fails.

Ohlsen alleges the Government suppressed a "report showing Witt maintained a law office inside Movant's place of business." The Government responds it does not possess and is not aware of any such material, and information known to Ohlsen cannot be the basis of a *Brady* violation.

The Government is correct. If Witt maintained a law office in Ohlsen's place of business, Ohlsen certainly knew of it. Information which is available from other sources than the prosecution or is already in the possession of a defendant is not covered by *Brady*. *United States v. Jones*, 460 F.3d 473, 479 (8th Cir. 1998) (citing *United States v. Gonzales*, 90 F.3d 1363, 1368 (8th Cir. 1996)). Failure to disclose information which can be obtained using reasonable diligence by the defendant is also not a *Brady* violation. *Id*. Whether Witt maintained a law

office inside Ohlsen's business, true or not, was either known by Ohlsen or could have been easily discovered by Ohlsen through reasonable diligence. This report Ohlsen references cannot be the basis of a claim for prosecutorial misconduct.

In Ohlsen's Reply, he states two 302's[10] pertaining to Attorney Witt were presented by the Assistant United States Attorney in cases 4:10CV1906 and 4:10CV1907, which indicate Witt maintained a law office in Ohlsen's place of business. The Court has reviewed the transcript from the evidentiary hearing in those cases and the Clerk's exhibit list. Neither mentions any presentation of reports by the Assistant United States Attorney in the case or by anyone else. Ohlsen's claim will be denied.

Ohlsen alleges the Government suppressed "reports showing Mr. Witt informed against other clients" and "worked to entrap his law clients while representing them." Ohlsen claims these reports show "a pattern of improper conduct by Mr. Witt and the government." The Government states Ohlsen cannot demonstrate the suppressed evidence, if it exists, is exculpatory or material to the issue of guilt. In support of his claim, Ohlsen attaches a transcript of an interview with Reid where he describes a story about when Witt allegedly attempted to get Reid to purchase drugs from an undercover Drug Enforcement Administration agent.

Whether Witt reported to the Government information against his clients is not relevant to Ohlsen's guilt. Ohlsen has not alleged these other clients were potential other suspects in the case. Ohlsen also has not alleged the information supposedly disclosed by Witt to the Government was related in any manner to the bombing. This evidence also has no impeachment value against Witt as he was not going to be called as a witness. Ohlsen has not included any specific facts alleging the law enforcement officers in this matter had any involvement in the alleged set up of Reid or any other individual. Ohlsen's claim will be denied.

---

[10] A 302 is ascribed to a form regularly used by agents of the Federal Bureau of Investigation.

Ohlsen claims the Government suppressed "evidence showing Witt maintained a 'special' relationship with the government." The Government states it does not possess any evidence, nor is aware of any evidence, which contains this information. Ohlsen states in his Reply, Witt was using his leverage with the Government to have cases dismissed against other clients, and he charged these clients $25,0000 for this service. Ohlsen includes no specific allegations to substantiate this claim. He does not include any names of clients who had cases dismissed, or any details of this practice. This claim is unsupported. Witt's relevance to this matter has not been shown by Ohlsen as already noted, the Government was not going to call him as a witness. Ohlsen's claim will be denied.

Ohlsen alleges the Government suppressed "evidence showing Witt was working with law enforcement during the searches of Movant's loft." The Government states it does not possess any evidence, nor is aware of any evidence, which contains this information. It also asserts Ohlsen has not shown how this evidence is favorable or material to him. Ohlsen attaches the phone records of Witt from December 18, 2008, ostensibly to show Witt was working with the Government during the search of the loft.

The phone records show Witt made dozens of calls on December 18th. Two of which were to telephone number 314-539-2212. The first call had an elapsed time of 0:00, the second call had an elapsed time of 2:05. This phone number is the main phone number for the United States Marshal's office in the Thomas Eagleton Courthouse in St. Louis, Missouri. The U.S. Marshals were not involved in the search of Ohlsen's loft. CD ECF No. 139, pgs. 55. Additionally, the first search of Ohlsen's loft occurred on December 19, 2008, and the second search occurred on December 22, 2008. *Id.* at 55, 60. Therefore, Ohlsen has failed to allege specific facts showing there is evidence Witt was working with law enforcement that was not

disclosed by the Government. Ohlsen's claim will be denied.

Ohlsen alleges the Government suppressed "evidence indicating Mr. Witt staged, removed, and planted evidence for law enforcement." Ohlsen also makes similar allegations in his claim the Government suppressed evidence showing "the Government knew Mr. Witt removed items from Movant's loft."[11] The Government states it does not possess and is not aware of any such evidence. Additionally, the Government states the only evidence of which it is aware and is relevant to this claim is Witt's testimony at the suppression hearing that Ohlsen asked Witt, while Ohlsen was in jail, to remove guns from his business and apartment and Witt did not comply.

The Court is unable to determine if the alleged evidence exists or if it is exculpatory or material because Ohlsen has failed to identify the evidence with any specificity. If Ohlsen is referring to the request to remove a gun from his loft, then it has been disclosed and cannot constitute prosecutorial misconduct. Ohlsen claims in his Reply, Witt removed hard drives which could have cleared Ohlsen in other cases. He claims these hard drives have evidence pertaining to other cases and not this one. Therefore, he has not established they are material or exculpatory in this matter. Ohlsen's claims will be denied.

Ohlsen alleges the Government suppressed evidence Ohlsen's loft "had been entered and tampered with during the search period." The Government states FBI Agent Jim Glynn testified at the suppression hearing, he had been told someone had entered Ohlsen's loft after the first search warrant was executed. The Government also claims it provided a report to defense counsel in which Reid told detectives he had removed a gun from Ohlsen's loft. The Government disclosed to defense counsel St. Louis County Police Report 8-58380 containing the information Reid entered Ohlsen's loft. ECF No. 5-1at 2. There is no evidence the Government suppressed

---

[11] Due to the similarity of these two claims, the Court will address them together.

evidence someone entered Ohlsen's loft. If Ohlsen refers to evidence other than this, he has failed to sufficiently describe the evidence to support a claim of prosecutorial misconduct. Ohlsen's claim will be denied.

Ohlsen claims the Government suppressed "evidence that Witt employed a recording/listening device during his jail interviews of Movant." The Government asserts it does not possess and is not aware of any of this evidence and Ohlsen cannot show such information is material or exculpatory. Ohlsen claims a police report states Witt was given a recording device for a conversation with Reid. Ohlsen also asserts this evidence could be used to impeach the credibility of the investigators.

Even if this evidence existed, it is not exculpatory or favorable to Ohlsen. Any information on the recording is known by Ohlsen as he is alleging the recordings are of interviews between Witt and himself. Further, this evidence is not material. Witt was not going to be called as a witness and there is no showing it had any effect on the credibility of the investigators. This claim will be denied.

Ohlsen alleges the Government suppressed evidence "the government was aware of criminal allegations and potential legal action against Witt." The Government states it learned of criminal allegations against Witt from Ohlsen's attorney and initiated an investigation. Further, the Government claims it informed Ohlsen's attorneys, in a letter, the nature of the allegations known to the Government. The Government contends Ohlsen has not shown the Government suppressed this evidence. A *Brady* claim cannot be based on evidence known to the accused. The Government learned the initial information from Ohlsen's attorneys. Once the Government learned more specific information about the criminal allegations against Witt, it informed Ohlsen's attorney. ECF No. 5-22. This evidence was not suppressed.

Ohlsen's claim there are other criminal allegations against Witt which were not disclosed also fails to establish prosecutorial misconduct. To support this allegation, Ohlsen refers to Witt's conviction in federal court of fraud. The case to which Ohlsen refers is *United States v. Jeffrey Witt*, 4:13-CR-00512 ERW. Witt was convicted of bank fraud, aggravated identity theft, and mail fraud for conduct which occurred in September 2013. Ohlsen pled guilty on September 11, 2012. Therefore, this information cannot be the basis of prosecutorial misconduct in this matter as the Government could not have informed Ohlsen of criminal conduct which had not yet occurred. Ohlsen's claim on this ground fails.

Next, Ohlsen alleges the Government "withheld copies of checks that Witt was paying on Movant's behalf." Ohlsen claims this evidence could have been used to impeach Witt. The Government states it disclosed to Ohlsen's counsel copies of checks from Witt to Ford Credit and Bank of America. Additionally, the Government argues this evidence is not material because Witt was not going to be a witness at Ohlsen's trial. Ohlsen asserts the Government withheld this evidence until after a plea had been entered.

The Government disclosed copies of checks from Witt to Ford Credit and Bank of America on August 31, 2012. ECF No. 5-23. The Government has not engaged in prosecutorial misconduct because it disclosed the evidence to Ohlsen prior to his change of plea.

Ohlsen's next allegation related to Witt is "the government withheld from the Court and suppressed reports that a hard drive they acquired from JB was actually removed from Movant's loft by Attorney Witt." Ohlsen claims this hard drive contained video which can clear Ohlsen in another criminal matter. Ohlsen contends the Government profited from Ohlsen being forced to plead in this other matter and it increased his criminal history. The Government states the hard drive to which Ohlsen refers is actually two digital video recorders. The Government states it

disclosed the forensic report of the recorders to Ohlsen on November 7, 2011, and provided copies of the contents of the recorders on December 1, 2011. According to the Government, the videos were surveillance of Ohlsen's ex-wife's residence. In his Reply, Ohlsen does not claim he is referring to anything other than the two digital video recorders but instead, asserts the suppression of the video and Reid's statements forced Ohlsen to plead guilty.

The video recordings and the forensic report of the video recordings were provided to Ohlsen's counsel. ECF No. 5-24, 5-25. The Government has not suppressed this evidence in violation of *Brady.* Ohlsen's claim fails.

6.      Michelle Ohlsen

Ohlsen's next two allegations concern his ex-wife Michelle Ohlsen. First, Ohlsen alleges the Government suppressed evidence of "photographs from Movant's airplane hangar provided to the Government by Michelle." Ohlsen claims the photographs show Michelle illegally entered the hangar and tampered with evidence, she was stalking and investigating Ohlsen, and she had access to items later found in other searches. The Government states it is not aware of and does not possess any such photographs. Additionally, the Government argues Ohlsen's claim his ex-wife was stalking and investigating him has no relevance to the bombing case and his assertions are speculative.

Ohlsen has failed to explain how these photographs are exculpatory or material. He has not stated how photographs of an airplane hangar would materially affect the outcome of his criminal case. His claims are speculative and he has not met the standard to establish prosecutorial misconduct. Ohlsen's claim will be denied.

Second, Ohlsen alleges the Government suppressed reports showing Ms. Ohlsen was the "source of information and documents relating to other investigations." Ohlsen claims Ms.

Ohlsen told federal authorities Ohlsen committed fraud, but swore to the accuracy of the documents establishing the fraud in state court. According to Ohlsen, this inconsistency could have been used to impeach Ms. Ohlsen. Further, he alleges Ms. Ohlsen illegally obtained evidence in other cases and the records showing this could impeach her and "show government willingness to gather information obtained through illegal means." The Government states it disclosed FBI 302 reports of Ms. Ohlsen's statements which concerned other crimes committed by Ohlsen. Exhibits 1 and 2 of the Government's response indicate these reports were disclosed to Ohlsen in July 2011. As for any other evidence to which Ohlsen refers, he has failed to provide specific facts for his accusations to establish the Government suppressed this evidence. Ohlsen's claim on this point is rejected because the Government did not suppress the reports.

### 7.     Attorney Cohen

Next, Ohlsen alleges the Government suppressed "an email showing Cohen defrauded Movant." Ohlsen claims this email could have been used to impeach Alan Cohen. The Government asserts it is not aware of any email and does not possess it. Additionally, the Government states Mr. Cohen was not a government witness. In his Reply, Ohlsen attaches an email he asserts the Government possessed which shows Mr. Cohen falsely testified at the evidentiary hearing and defrauded Ohlsen.

The Court has reviewed the email Ohlsen attached. It is an email chain between Alan Cohen and Ohlsen. Because this information was known to Ohlsen, it cannot be the basis of prosecutorial misconduct. Further, Ohlsen has not shown the materiality of this email, or any other alleged emails, when Mr. Cohen was not going to be a witness at a trial for the Government and would not need to be impeached. His claim on this ground fails.

### 8.     Chervonda Scott

Ohlsen alleges the Government suppressed Chervonda Scott's statement from the grand jury. Ohlsen claims her testimony directly contradicts Reid's grand jury testimony about the location of a meeting and "makes the government's timeline unfeasible." The Government claims the meeting Ohlsen references is between Reid, Ms. Scott and Ohlsen before Ohlsen took the basket with the bomb to Clayton. The Government contends *Brady* does not require a prosecutor to disclose exculpatory evidence to a grand jury. The Government states Ms. Scott's statement was disclosed to Ohlsen in July 2011, along with Reid's grand jury testimony. Lastly, the Government argues Ms. Scott's statement is not exculpatory.

A prosecutor does not have a duty to disclose exculpatory evidence to the grand jury. *United States v. Williams*, 504 U.S. 36, 51-53 (1992). Requiring exculpatory evidence to be introduced to the grand jury would change the grand jury's function from an accusatory body to an adjudicatory body. *Id.* at 53. Further, although the Government must correct any possible injustice from the presentation of perjured testimony to the grand jury, it must only do so when the testimony is material to the grand jury's deliberations. *United States v. Guillette*, 547 F.2d 743, 752-53 (2d Cir. 1976). The allegedly perjured testimony Ohlsen references is not material to this matter, as it only concerns the location of two inconsequential meetings. The first, Ohlsen claims, Reid stated occurred at a gas station at Florissant Road while Ms. Scott stated the meeting took place at a gas station at Lucas and Hunt Road. The second, Ohlsen claims, Reid stated occurred at Vette's restaurant while Ms. Scott stated it occurred at a corvette dealership. These are obviously not material to this matter. Ohlsen pled guilty, this material was disclosed to the defense prior to his guilty plea, and the Government was not required to disclose Ms. Scott's statements to the grand jury. Ohlsen's claim fails.

9.      Eyewitnesses

Ohlsen makes three allegations in regards to suppression of eyewitness statements. First, Ohlsen claims eyewitness statements were withheld from the grand jury which stated "the bomber was a light skinned black male." The Government asserts it is not required to disclose exculpatory information to the grand jury and Ohlsen's guilty plea cures any deficiencies in the grand jury proceedings. The Government states it disclosed the eyewitness statements to Ohlsen in July 2011. As stated previously, the Government is not required to present exculpatory evidence to the grand jury. *See Williams*, 504 U.S. at 51-53. If Ohlsen is claiming any other allegations of grand jury misconduct, he waived his ability to raise a claim of grand jury misconduct when he pled guilty. *Alston v. Ricks*, No. 01 Civ. 9862(GWG), 2003 WL 42144 at *7 (S.D.N.Y. Jan. 7, 2003) (citing *Lopez v. Riley*, 865 F.2d 30 (2nd Cir. 1989)). Although Ohlsen claims he preserved these rights at his change of plea, he cannot preserve rights he does not have. *Guillette*, 547 F.2d at 752 ("An indictment returned by a legally constituted and unbiased grand jury generally is not subject to attack on the ground that is based on inadequate or incompetent evidence."). Ohlsen's claim on this ground will be denied.

Ohlsen's second allegation is "JG's statement was withheld, and intentionally omitted from the official investigative report." Ohlsen claims this statement contradicts the Government's timeline and grand jury testimony. The Government states it is not clear to which "JG" Ohlsen is referring because there are four potential JGs in the case including:  John Gillis, the victim of the bombing, Special Agent James Glynn, an FBI agent involved in Ohlsen's fraud and gun investigation, Joseph Gardner, an employee of the company who sold the black powder used in the bomb, and John Gleason, a waiter at a restaurant in the same building as the parking garage where the bomb was placed. According to the Government, any statements given by these individuals were provided to Ohlsen.

In Ohlsen's Reply, he does not identify which JG to which he refers. He focuses on the Government's response which addresses John Gleason's statement. The Court will assume this is the correct JG as it has no other information as to whom is the correct JG. Ohlsen asserts the disclosure by the Government was too late to be of use to his defense. He cites *Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001), in which the Second Circuit Court of Appeals overturned the defendant's conviction because the prosecution failed to disclose exculpatory evidence in a timely manner. *Id*. In *Leka*, the prosecution disclosed the identity of a key witness three days before trial. In this matter, Mr. Gleason's statement was disclosed to the defense on July 19, 2012, and the trial was scheduled for September 17, 2012. ECF No. 5-27, CD ECF No. 157. This was ample time for Ohlsen to use the evidence in his defense. Additionally, when neither the Government nor the Court can discern the identity of the individual referred to in the claim, the claim lacks the required specificity. The Court cannot determine the validity of Ohlsen's claim when he does not include the name of the individual whose statement he is claiming was withheld. Ohlsen's claim fails.

Ohlsen's third claim is the Government suppressed photographic lineups of Ohlsen. Ohlsen asserts the eyewitnesses picked individuals other than Ohlsen out of the lineup. The Government asserts it does not have any evidence of photographic lineups in this case. Because Ohlsen does not show the existence of this evidence, his claim fails.

10.    Withheld Deals

Ohlsen makes three allegations in regards to suppressed evidence of deals with witnesses. First, Ohlsen alleges the Government withheld a deal to not prosecute Reid in exchange for testimony. The Government asserts Ohlsen was provided with copies of Reid's plea agreement, as well as copies and reports of interviews of Reid. The plea agreement between the Government

and Reid was provided to Ohlsen in August, 2011. ECF No. 5-26. Ohlsen asserts there were other agreements between the Government and Reid and he attaches a transcript of an interview between law enforcement officers and Reid in which the officers talk about potential charges against Reid. This does not establish there were secret deals made between the Government and Reid. It is clear from the transcript the officers are referencing possible charges that could be brought based on Reid's conduct in regards to the bombing. It does not concern other crimes which Reid committed and received a deal from the Government. Ohlsen's *Brady* claim fails because the Government did not suppress the evidence alleged.

Next, Ohlsen alleges the Government suppressed evidence Danielle Frazier received monetary payments for information. The Government states Ms. Frazier made statements against Reid but did not have knowledge of Ohlsen's involvement in the bombing. The Government claims Ms. Frazier's statement was disclosed to Ohlsen in a police report in July 2011, and she was not a witness for the Government. Lastly, the Government states Ms. Frazier was provided with funds from Federal agents to relocate after she expressed fear for her safety.

The Government is not required to disclose impeachment evidence for witnesses who are not testifying. *See United States v. Valdes*, 214 Fed. Appx. 948, 951 (11th Cir. 2007); *United States v. Mullins*, 22 F.3d 1365, 1372 (6th Cir. 1994). The Government was not required to disclose Ms. Frazier's relocation was paid for by the Government because she was not a testifying witness. In his Reply, Ohlsen asserts this information could have been used to impeach Reid because Ms. Frazier was afraid of Reid. This reasoning also fails because the Government's payments to relocate Ms. Frazier have minimal value, if any, to an impeachment of Reid. This information was not material. Ohlsen's claim fails.

Ohlsen alleges the Government withheld an agreement with Rick Kalina not to prosecute

Mr. Kalina's father in exchange for "scripted" testimony from Mr. Kalina. Ohlsen also claims the Government persuaded Mr. Kalina not to tell Ohlsen about the "illegal search at 462 North Taylor." The Government asserts this claim is false; no such agreement was made with Mr. Kalina. Ohlsen asserts in his Reply that the Government has admitted there was an illegal search of this address. The Government did not admit this in its Response and Ohlsen fails to provide any support for these allegations. He fails to specify for what crimes Mr. Kalina's father was going to be prosecuted or the contents of the scripted testimony to which Mr. Kalina allegedly agreed. His claim will be denied.

11.    Other Searches

Ohlsen alleges the Government withheld information regarding three illegal searches. First, Ohlsen claims the Government did not have a warrant or consent to search 462 North Taylor. The Government asserts Ohlsen has failed to meet the requirements of *Brady* because he has not demonstrated any material or exculpatory evidence was found in the search. It is not clear from the Government's response if a search was conducted of 462 North Taylor. However, it does not matter to Ohlsen's claim because Ohlsen fails to specify what evidence should have been suppressed from the search but was not suppressed. Ohlsen fails to allege any evidence was material or exculpatory and would have changed the results of his conviction. His claim evidence the investigator's engaged in illegal searches could be used to impeach the investigators is unbelievable. Under Ohlsen's theory, the requirements of prosecutorial misconduct are essentially null and void, because according to Ohlsen, every piece of evidence not disclosed impacts the investigator's credibility. This is not the law. Ohlsen's claim fails.

Second, Ohlsen alleges the Government did not have a warrant or consent to search 2309 North Ballas. The Government states Michelle Ohlsen consented to the search of the residence

and the report containing this information was disclosed to Ohlsen in July 2011. Further, the Government contends Ohlsen did not challenge the legality of this search in his motions to suppress. Ohlsen claims the consent to search was obtained on October 21, 2008, but the search took place on October 20, 2008, which is contained in the police reports. It is clear from the exhibits provided by the Government, Ohlsen's counsel received the police report of the search and Ms. Ohlsen's statements. This evidence was not suppressed by the Government. As his Reply indicates, he had a copy of the police report and the dates of the search and consent to search. Ohlsen had an opportunity to challenge the legality of the search prior to pleading guilty, as he did with other evidence in his motions to suppress. Failure to challenge the search in a motion to suppress may raise an ineffective assistance of counsel claim, but it is not the basis of prosecutorial misconduct. Ohlsen's claim fails.

Lastly, Ohlsen alleges the Government did not disclose reports of searches of video recording devices. Ohlsen claims consent forms and an index of the evidence would have allowed him to prove the existence of other recordings. He also states these recordings are exculpatory because they contradict grand jury testimony and show a pattern of misconduct by the Government. Further, Ohlsen contends the recordings are valuable impeachment evidence. The Government states, as previously discussed in prior allegations, it produced video from the parking garage surveillance cameras, and copies of two digital video recorders. As this Court has recognized *supra*, the Government did not suppress this evidence. It was produced to Ohlsen's counsel. Ohlsen's reference to consent to search forms and index of evidence does not support his claim because the garage videos were produced voluntarily by the owner of the parking garage and the two digital recorders were seized pursuant to a search warrant which would not require a consent to search form. Ohlsen has not provided any support for the existence of other

video recording devices. Ohlsen's claim fails.

### 12. Explosive Detecting Canine

Ohlsen alleges the Government suppressed evidence a canine was used in the search of Ohlsen's loft which he claims is exculpatory, because the canine did not detect explosive material in the loft. The Government states a canine was not used in the search of Ohlsen's loft and Ohlsen has not demonstrated the existence of contrary evidence. In his Reply, Ohlsen attaches a photograph from the search which appears to show a canine in it. He states if this is not an explosives detecting canine, it is still exculpatory because a random animal was allowed to travel through a secure search area. This information is not material and entirely speculative. The existence of a random animal in the search area is not impeachment material. As Ohlsen admits, he is assuming there is such evidence, which is not enough to establish prosecutorial misconduct.

### 13. Evidence Tampering

Ohlsen alleges the Government withheld it tampered with evidence. Ohlsen claims the Government altered a "FD 597 to include evidence provided by Attorney Witt." Ohlsen's basis for his claim is some FD 597s show two blackberries were seized, while other copies do not. He is asserting the Government added the blackberries to the FD 597 to make it seem as if they were seized in the search even though they were provided by Witt. The Government responds an FD 597 is an evidence receipt. The FD 597 attached to the search warrant return was introduced into evidence at the evidentiary hearing on June 29, 2012. ECF No. 31-6. On this FD 597, two blackberries are listed. The Government contends Ohlsen has failed to show how this evidence was material or favorable.

The Court agrees with the Government. Even if Ohlsen's claim is true, he has not shown

the significance of these two blackberries. He claims there was damaging evidence on them, but does not state what this evidence was or how it was damaging. Therefore, he has failed to show this evidence was material or favorable. His assertions this could have been used for impeachment material against the investigators fail to convince the Court this evidence was material. Materiality requires the accused show "there is a reasonable probability that if the allegedly suppressed evidence had been disclosed at trial the result of the proceeding would have been different." *Mandacina,* 328 F.3d at 1001. Because Ohlsen pled guilty, he must show he would have proceeded to trial had this evidence been disclosed. Ohlsen has not shown he would have proceeded to trial even if he had known two blackberries were added to the search warrant receipt, especially considering the considerable amount of evidence showing Ohlsen committed the crime and the blackberries did not contain evidence on them.

Next, Ohlsen alleges the Government represented evidence seized during the December 22, 2008, search was actually seized during the December 19, 2008, search. Ohlsen claims this may be an attempt to hide the fact someone had tampered with the scene. The Government states it did not misrepresent evidence was seized on December 22nd which was actually seized on December 19th, and Ohlsen has failed to establish how the date of seizure is material or exculpatory.

Ohlsen asserts the metadata associated with the search photographs establishes the photographs represented as being taken on December 22nd were actually taken on December 19th. Ohlsen's motions to suppress evidence from the searches of his loft were litigated over two days of evidentiary hearings before being denied by Judge Baker. The issue of the metadata was also raised by defense counsel prior to the evidentiary hearings, which shows defense counsel was aware of the issue. ECF No. 31-11, 31-12. There is no indication in the record from the

hearing any evidence was misrepresented by the Government. The agent testifying stated he did not set the date on either camera used to take photographs. CD ECF No. 201, pgs. 85-87. The agent also testified photographs were taken on December 19th but no evidence was actually seized until December 22nd. CD ECF No. 201, pgs. 82-84. It is clear the Government did not suppress any evidence related to the searches done of Ohlsen's loft. Further, Ohlsen does not indicate what evidence was said to be seized on December 22nd that was seized on December 19th; therefore, he does not establish this is material or favorable to him. Ohlsen claims if Judge Baker had known the items were seized on a previous date, it would have had a bearing on her findings. Judge Baker did know about the issue with the metadata on the cameras because it was raised at the evidentiary hearing. Lastly, Ohlsen fails to establish why the date the items were seized has any impact on his case besides as impeachment material. Ohlsen's claim is denied.

Ohlsen's last allegation of evidence tampering is the Government staged evidence for photographs of Ohlsen's vehicle. The Government states an identification detective took photographs of the interior of Ohlsen's vehicle as items were seized and these photographs were provided to Ohlsen in July 2011, and then again in December 2011. The Government states the photographs show where the items were originally found and also items after they had been moved.

At the suppression hearing, Ohlsen's attorney fully explored with various law enforcement officers whether items in the vehicle had been moved, particularly an issue with items in the cup holders of the vehicle. Additionally, Ohlsen was provided with all of the photographs of the vehicle. *See* ECF No. 5-1, 5-2, 5-28. The Government did not suppress any photographs and Ohlsen has provided no basis for his claim evidence was staged for the photographs. He has also not shown how this information is exculpatory or could be used as

impeachment material. Ohlsen's claim will be denied.

14.    Data Analysis

Ohlsen claims the Government possesses phone tracking data and analysis which proves Reid's statements are false. Ohlsen states these records contradict grand jury testimony and are clearly exculpatory. The Government states it provided Ohlsen with phone records from Ohlsen's phone and Reid's as well as the cell tower information for the two phones. Further, the Government contends this evidence was inculpatory, not exculpatory. This evidence was not suppressed. ECF No. 5-1, 5-2, 5-29, 5-31. Additionally, contrary to Ohlsen's arguments, a prosecutor is not required to present certain evidence to the grand jury, whether inculpatory or exculpatory. Ohlsen's claim fails.

Ohlsen's final claim of prosecutorial misconduct is the Government possesses Net Data Analysis showing Ohlsen's computer was accessed while he was in custody and before a warrant was obtained to search the computer. The Government states it provided Ohlsen with the Net Analysis Data in July 2011, and Ohlsen's attorney questioned Detective Brian Mize about the data. A review of the transcript from the suppression hearing confirms the Government's response. Ohlsen's attorney did question Detective Brian Mize about the Net Analysis Data. This evidence was not suppressed by the Government. See ECF No. 5-1, 5-2. Ohlsen also claims the forensic report shows officers began their analysis before the warrant was issued. However, the forensic report Ohlsen supplies states a forensic examination was requested, it does not state an examination was started at that date. Ohlsen's claim fails.

All of Ohlsen's claims of prosecutorial misconduct either fail to specify the evidence suppressed or fail to establish how the evidence is favorable, material, or exculpatory to Ohlsen. In many of his claims, the record directly refutes his allegations. The Government did not

commit prosecutorial misconduct in this case based on these allegations.

### 2.  *Claims of Ineffective Assistance of Counsel*

Ohlsen's next category of claims is allegations of ineffective assistance of counsel in violation of his Sixth Amendment rights. Ohlsen divides his claims into eight different types of ineffective assistance of counsel which are further broken down into more specific allegations. The Court addresses each *infra*.

To establish a claim for ineffective assistance of counsel, a defendant must show the counsel's performance was deficient and counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Prejudice requires the defendant to show he was deprived of a fair trial because of the deficiency. *Id*. Under the first prong, the measure of an attorney's performance is "reasonableness under prevailing professional norms." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. To establish the second prong of prejudice, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When a defendant has pled guilty, the defendant must demonstrate there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Matthews v. United States*, 114 F.3d 112, 114 (8th Cir. 1997) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). A court need not address both prongs of the analysis if the defendant makes an insufficient showing on either prong. *Strickland*, 466 U.S. at 697.

A guilty plea and representations made by a defendant during the plea-taking create a "strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997). When a defendant

admits he is satisfied with his lawyer, there were no threats or promises to induce him to plead, and he voluntarily admits his guilt, he has a "heavy burden" to show his plea was involuntary. *Id.* "Once a person has entered a guilty plea, any subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Tran v. Lockhart*, 849 F.2d 1064, 1068 (8th Cir. 1988).

Before addressing Ohlsen's specific claims of ineffective assistance of counsel, the Court will first address Ohlsen's general assertions he did not admit he committed the bombing at issue in this matter. Ohlsen claims because he stated at the plea hearing "I will change my plea to guilty, Sir," instead of stating "I am guilty," he did not admit to committing the bombing. This, simply, is not true. Besides agreeing to plead guilty at the change of plea hearing, Ohlsen also signed the guilty plea agreement, which contains the language "defendant admits to knowingly violating Title 18, United States Code, Section 844(i), . . . and fully understands that the elements of the crime of Malicious Use of an Explosive Device . . ." CD ECF No. 174, pg. 2. The plea agreement also states: "The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty." CD ECF No. 174, pg. 11. The Eighth Circuit has stated "a plea of guilty admits all of the elements of a criminal charge." *Mack v. United States*, 853 F.2d 585, 586 (8th Cir. 1988). Therefore, the Court will not entertain assertions he did not admit to guilt because he stated "I will change my plea to guilty," rather than "I am guilty."

A.      Failure to Investigate, Prepare for Trial and Prepare Defenses

Ohlsen's alleges his counsel failed to investigate, prepare for trial, and prepare defenses. Included in this are allegations of failure to investigate impeachment evidence, failure to

interview witnesses, failure to examine and preserve evidence for trial, failure to research and prepare motions, failure to provide Ohlsen with proper courtroom attire, and failure to investigate various facts. The Court will address each claim individually.

1.      Impeachment Evidence

Ohlsen makes six claims of ineffective assistance of counsel related to impeachment evidence. Generally, Ohlsen alleges his counsel failed to investigate evidence needed to impeach witnesses and the government's investigation. Ohlsen's first claim is he provided his counsel with a list of "Reid's Bad Deeds" which included other actions Reid had taken similar to the actions in this case. Ohlsen states he asked counsel to confirm specific details and subpoena Reid's phone numbers. According to Ohlsen, this was critical to impeaching Reid. The Government states it intended to call Reid as a witness and it provided Ohlsen with plenty of impeachment material for Reid including reports of his prior contradicting statements and the Administrative Hearing Commission's findings Reid misused official information. The Government contends Ohlsen fails to demonstrate deficient performance or prejudice.

Ohlsen provides no support for his allegation. He fails to allege what was included on this list of "bad deeds" or what details he requested counsel to confirm and were not confirmed. He could have easily listed some of the alleged "bad deeds" he needed investigated but he did not. Ohlsen does not establish his counsel was deficient for an alleged failure to investigate supposed bad deeds by Reid. Although the Court "liberally construe[s]" a pro se petition, the Court cannot create Ohlsen's arguments for him when "his allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.2d 1144, 1147 (8th Cir. 1994). Ohlsen pled guilty in open court after a lengthy plea process to ensure his plea was voluntary. He cannot overcome his guilty plea declaration. Ohlsen's claim fails.

Ohlsen's next claim is his counsel failed to conduct a background investigation of "JH" which would have found JH's stalking and harassment victims and JH's history of planting narcotics. Ohlsen also claims the investigation would have found JH assumed the identity of others. The Government states JH refers to Joel Hollenbeck, the ex-husband of Ohlsen's girlfriend. The Government claims Ohlsen maintained a long-held hatred of Mr. Hollenbeck and Mr. Hollenbeck would not have provided direct evidence tying Ohlsen to the bombing at a trial.

When a movant claims ineffective assistance of counsel for failure to investigate and the movant pled guilty to the crime, movant's claim will depend on whether the evidence would have changed the outcome of a trial. *Hill*, 474 U.S. at 59. Ohlsen does not allege any facts which indicate knowledge of Mr. Hollenbeck's background would have affected a trial, because he does not establish the importance of Mr. Hollenbeck in establishing his guilt. Ohlsen fails to establish prejudice and his claim fails.

Ohlsen's third allegation is his counsel failed to conduct a background investigation of "MLO" which would have shown MLO's contact with JH and presence of prior false statements. Ohlsen lists specific examples including MLO's testimony she did not know Ohlsen's address, but then was able to provide it; she provided financial documents to the Court asserting they were accurate, but then told federal agents the same documents were fraudulent; and she was involved in assuming the identity of another and she conducted online harassment. The Government states MLO refers to Michelle Ohlsen. The Government also states Ohlsen was provided with FBI 302s detailing Ms. Ohlsen's statements about other investigations, communication with Joel Hollenbeck and websites he created about Ohlsen's activities. According to the Government, Ohlsen fails to identify information he did not previously know which would have impeached Ms. Ohlsen; thus, he fails to show deficient performance.

Ohlsen was provided with the information he alleges concerning Ms. Ohlsen. Further investigation by his counsel would not have been fruitful as the impeachment evidence listed was already in Ohlsen's possession. Ohlsen fails to establish deficient performance by his counsel and his claim fails as a result.

Ohlsen's fourth allegation is his counsel failed to interview rebuttal witnesses who could testify Robert Lee's story was false. Ohlsen claims he gave his counsel names of witnesses, including Ohlsen's workout partner and Mr. Lee's cellmate, who would testify Mr. Lee and Ohlsen did not associate, the statements Lee claims to have heard were not made by Ohlsen, and these statements would have been out of character for Ohlsen. The Government states Ohlsen's claim is refuted by the record because, at the plea hearing, he was asked if there were any other witnesses who may be helpful and have not been contacted to which Ohlsen responded "no." The Government also states it did not intend on calling Mr. Lee as a witness, because his statements were not consistent with the Government's other evidence.

Ohlsen had an opportunity to identify additional witnesses he wished to be contacted and while under oath, he stated no.[12] Now after spending several years in prison, he is contending there were numerous witnesses who should have been contacted. Ohlsen asserts Mr. Lee was included on the Government's witness list, but a proposed witness list had not yet been filed by the Government when Ohlsen decided to plead guilty. Ohlsen attached, to his Reply, an affidavit of the witness, Stephen Jones, he claims could have testified against Mr. Lee. Mr. Jones

---

[12] Ohlsen now claims he was not given an opportunity to identify additional witnesses he wished to be contacted at the hearing. At the change of plea hearing, the Court informed Ohlsen he would be giving up a number of important rights if he pled guilty, one of which included the right to issue subpoenas and compel the attendance at a trial of a helpful witness. CD ECF No. 209, pg. 10. The Court asked Ohlsen if he knew of the identity or existence of any witnesses helpful to his case that were not contacted. *Id.* Ohlsen responded, "Not before we proceed today, sir, no." *Id.* Ohlsen now claims his counsel told him not to raise any issues of contacting witnesses at the plea hearing. The Court finds this claim to be incredible, Ohlsen told the Court, while under oath, there were no witnesses to contact. Even if it were true, Ohlsen would still need to establish the witnesses he wished to contact were helpful to his case and a failure to interview these witnesses was ineffective assistance of counsel which he fails to do.

allegedly was Ohlsen's friend and workout partner and Mr. Lee's cellmate. ECF No. 29-6. In the affidavit, Mr. Jones states "While incarcerated at Yazoo City . . . I was Skip Ohlsen's friend and workout partner . . . Robert Lee was my cellmate." *Id*. The issue with this affidavit and Ohlsen's claim is Ohlsen was not housed in Yazoo City, Mississippi, prior to trial. At the time of the plea, he was being housed at the Crawford County Jail, which he listed as his address at the change of plea hearing. CD ECF No. 209, pg. 2. It is unclear how Ohlsen could have known Mr. Jones and worked out with him at Yazoo City prior to Ohlsen being housed at the facility. The Court finds it difficult to believe Ohlsen asked his counsel to interview this witness prior to trial. Ohlsen's claim will be denied.

Ohlsen's next allegation is his counsel failed to obtain a copy of an affidavit Witt executed during a visit with Ohslen in the St. Louis County jail. Ohlsen claims this affidavit shows Witt was an attorney for Ohlsen and the affidavit would go to Witt's character and credibility. As part of this claim, Ohlsen alleges his counsel failed to interview rebuttal witnesses such as the property manager and Witt's associates, who would testify Witt represented himself as Ohlsen's attorney and entered Ohlsen's loft. Ohlsen claims there is substantial evidence Witt was stealing from Ohlsen and other clients as well as evidence Witt was attempting to inform on and entrap his law clients and associates. The Government states it informed Ohlsen's counsel, Witt would not be called as a witness; thus, impeachment material is not necessary. Ohlsen is unable to show prejudice or deficient performance for failure to investigate impeachment material for a non-witness. His claim of ineffective assistance of counsel fails.

Ohlsen's last allegation related to impeachment material is his counsel failed to obtain and familiarize himself with prior statements and actions of prospective witnesses. The Government asserts Ohlsen's claim is refuted by the record when he stated he did not know of

any other witnesses he wished to be contacted. Ohlsen provides no factual basis for his claim his attorneys did not review prior statements and actions of prospective witnesses. Based on the transcript from the suppression hearing, it is clear Ohlsen's attorneys were well-versed in the evidence. Ohlsen fails to establish his counsels' performances were deficient on these bases.

2.      Interview

Ohlsen's next set of allegations are regarding his counsel's alleged failure to interview and subpoena witnesses. Ohlsen makes eight allegations. First, Ohlsen alleges counsel should have interviewed Ohlsen's employees, coworkers, and a St. Louis County Police Officer who could have testified Ohlsen's vehicle was parked in the rear of the building, not the front, when he was arrested. Ohlsen also claims these witnesses could have testified the officer who arrested him on December 15, 2008, returned to Ohlsen's office in an attempt to access his vehicle and was working in conjunction with the intelligence bureau. The Government states Ohlsen's claim is refuted by the record when he denies there are other witnesses to be contacted in this case at the guilty plea hearing.[13] Further, the Government asserts Ohlsen's December 15th arrest is not relevant to the December 17th arrest so his counsel cannot be ineffective for failing to raise a meritless claim.

Ohlsen raised a claim of prosecutorial misconduct based on the same factual allegations and as the Court noted *supra*, reference to the December 15th arrest was minimal at the suppression hearing and did not have any bearing on the December 17th arrest as none of the arresting officers were involved in the first arrest. The officers testified there was no communication with the officers who arrested Ohlsen on state charges on December 15th.

---

[13] Ohlsen was told at the guilty plea hearing, "You have a right to insist upon issuance of subpoena or other compulsory process to compel the attendance at a trial of any witness you identify as helpful to your case. Do you know of the identity or existence of any witness or witnesses that you think might be helpful to your case that have not yet been contacted, but that you think should be contacted before we proceed any further today?" Ohlsen answered, under oath, "Not before we proceed today, sir, no." CD ECF No. 209, pg. 10.

Ohlsen fails to establish how even if these witnesses had testified, it would have resulted in him pleading not guilty. Thus, he fails to demonstrate prejudice.

Second, Ohlsen claims counsel failed to interview "MO" who would have testified he did not speak with "CS" on the phone, impeaching CS's statement. The Government presumes Ohlsen's claim means Ohlsen's father, Milton Ohlsen Jr., would have stated he did not speak to Chervonda Scott on the day the bomb was planted. According to the Government, Ms. Scott told authorities Ohlsen gave her his vehicle and cell phone and told her to drive around St. Charles calling and/or texting Ohlsen's father and girlfriend to create an electronic alibi for Ohlsen. Additionally, according to the Government, the telephone records show Ohlsen's phone was used to call his father and text his girlfriend during this time period. The Government asserts Ohlsen's claim fails to demonstrate deficient performance or prejudice. Even if the Court presumes Ohlsen's statement is correct, Ms. Scott did not speak with Mr. Ohlsen, Jr. on the phone, it does not refute Ms. Scott's statement she called and/or texted Mr. Ohlsen, Jr. Ohlsen fails to establish prejudice and his claim fails.

Third, Ohlsen claims his counsel failed to interview "TH" who could have testified he told Ohlsen, "RE" was out of town before the incident. The Government states "RE" refers to Richard Eisen, Ms. Ohlsen's divorce attorney and the intended victim of the bombing, but it has no knowledge of the identity of "TH." The Government also states Ohlsen admitted in his plea agreement "he concealed the explosive device in a gift basket and placed the basket next to an Acura TL that he incorrectly believed belonged to R.E." Because Ohlsen fails to identify "TH," the Court is unable to evaluate his claim. The Court cannot fashion arguments for Ohlsen. Ohlsen fails to establish ineffective assistance of counsel on this claim.

In his fourth claim, Ohlsen alleges his counsel failed to interview witnesses who could

have testified the suspect was a light-skinned black male and Ohlsen had cleared a line-up. In his fifth claim, Ohlsen alleges his counsel failed to interview witnesses who could testify they spoke to Ohlsen during the time period the Government claims Ohlsen was in Clayton. Ohlsen states he provided counsel with the identity of the witnesses, the location, and the substance of the conversations. The Government's responses to these two claims are substantially similar. The Government asserts Ohlsen's claims are refuted by the record when he told the Court there were no witnesses remaining to be contacted at the guilty plea hearing. The Government also states Ohlsen swore on the record he was responsible for the bombing. Lastly, the Government claims Ohlsen fails to identify these witnesses and cannot show their testimony would have created a reasonable probability he would not have pled guilty and would have been acquitted.

Ohlsen identifies a few witnesses in his Reply; he refers to three police reports summarizing statements from eyewitnesses to the crime. However, Ohlsen still fails to properly allege prejudice. When evaluating a claim counsel has failed to investigate and the defendant has pled guilty, "the determination of whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 59. Interviewing these witnesses, as Ohlsen suggests, would not have led his counsel to change his recommendation as to the plea because interviewing these witnesses would not have led to new evidence. The information these witnesses held was contained in the police reports. When Ohlsen's counsel recommended he plead guilty, he did so with the knowledge two witnesses had described the bomber as a "possible white male, dark completed or light skinned black male." Ohlsen cannot establish prejudice for this claim and it

fails as a result.

Next, Ohlsen claims his counsel failed to interview "JB" who would have stated Witt gave him items illegally removed from Ohlsen's loft. Ohlsen asserts this was valuable to impeach Witt and it would have impacted the credibility of the Government. Ohlsen also claims this evidence would have cleared him in another criminal case which would have reduced his criminal history. The Government states this claim is similar to earlier claims and appears to be referencing the two digital video recorders given to authorities by "JB," which were the subject of a federal search warrant which was not challenged by Ohlsen. The Government also asserts impeachment evidence against Witt was unnecessary.

Witt was not going to be called as a Government witness. ECF No. 5-17. Therefore, investigation of impeachment evidence against Witt would not have an effect on Ohlsen's guilty plea or any potential trial. As for Ohlsen's claim this evidence would have cleared his conviction on a different crime, the proper place to challenge that conviction is before the court which convicted him of the crime, not this Court. Further, the sentence Ohlsen received, in this Court, was the sentence for which he bargained in his plea agreement. His prior criminal history did not affect his sentence in this matter. This claim fails.

Ohlsen's seventh claim is his counsel failed to interview individuals who would testify Witt claimed he was Ohlsen's attorney. The Government states any claims regarding Witt are not relevant because Witt was not going to be called as a witness. Additionally, the Government contends Judge Baker and Judge Autry have already rejected Ohlsen's claim Witt was his attorney. As discussed *supra*, the issue of Witt's position as Ohlsen's attorney has already been well-litigated and it was determined Witt and Ohlsen did not have an attorney-client relationship on any criminal matters. The relevance of any evidence showing Witt was Ohlsen's attorney is

inexplicable to the Court as Witt was not going to be called as a witness. Ohlsen's claim fails because he has not established his counsel was deficient or prejudice resulted from any deficiency.

Ohlsen's last allegation concerns his counsel's failure to interview the staff at the Ritz Carlton Hotel and area restaurants and shops to verify security footage had been turned over to authorities. The Government contends Ohlsen's claim is purely speculative because it assumes such evidence exists, it was exculpatory, and was provided to law enforcement. Counsel is not ineffective for failing to interview every possible witness or pursue every possible line of investigation. It is unreasonable to expect counsel to interview staff from all surrounding businesses in attempt to find possible security footage when there is security footage from inside the parking garage which shows Ohlsen placing the basket containing the bomb next to a vehicle. Counsel is not required to pursue meritless claims. Ohlsen's claim will be denied for failure to show deficient performance.

### 3.     Trial Preparation – Evidence

Ohlsen next makes fifteen claims his counsel failed to prepare evidence for trial. Most of his claims are entirely speculative and will be denied. The Court will analyze those claims first. Ohlsen makes the following allegations of ineffective assistance of counsel:

(a)[14] Counsel should have examined credit card statements which would show he did not use a credit card at the Cheshire Inn as Reid testified;

(b) Counsel should have examined Mr. Sanders "whose DNA was found near the device" and "could have shown a link to Aaron Reid;"

(c) Counsel should have examined photographs taken by a "property agent" of a home on

---

[14] The lettering corresponds to the lettering in Ohlsen's petition.  Some letters may be missing because those claims require more analysis and will be discussed *infra*.

Ballas and compared them with photographs of the search which would have shown the scene was tampered;

(e) Counsel should have examined the "United Reservations System" to show his trip to California was scheduled weeks in advance and not "at the last minute as the government contended;"

(f) Counsel should have examined the contents of a book the Government intended to introduce into evidence including dusting it for prints and swabbing it for DNA to show Ohlsen did not have recent contact with the book;

(h) Counsel should have made transcriptions of audio recordings of "MO, SP, KH, JH etc." for background and impeachment;

(i) Counsel should have obtained Reid's training records, including military training, to show Reid's knowledge of "destructive devices;"

(j) Counsel should have obtained evidence showing the Government gave "false and misleading info to prison officials to impact Movant's custody level and access to counsel;"

(k) Counsel should have obtained "evidence, including phone data, tactical meeting records, officer statements, and jail logs, pertaining to the illegal suppression of an arrest warrant by government agents;"

(l) Counsel should have taken "prompt action" to secure records, including "REJIS logs, phone records, and files" hidden by Witt;

(m) Counsel should have investigated and preserved physical evidence of other devices "employed by Mr. Reid and items stored by Mr. Reid;"

(o) Counsel should have obtained phone data of potential witnesses to verify where witnesses were and with whom they were communicating; and

(p) Counsel should have investigated government witnesses and experts. The Government's response to these claims is they are all vague, conclusory, and completely speculative without supporting facts. The Government asserts Ohlsen has failed to show ineffective assistance of counsel because he provides no support for his accusations.

Ohlsen's allegations are purely speculative. He does not provide enough to raise a constitutional issue. *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998). Ohlsen pled guilty and stated to the Court he was satisfied with his lawyer, which creates a "formidable barrier" in these proceedings. *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (citing *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). His allegations, unsupported by specific facts, are subject to "summary dismissal." *Tran v. Lockhart*, 849 F.2d 1064, 1067 (1988). Ohlsen's above-listed claims will be denied.

Ohlsen's two remaining claims in this category are as follows. First, Ohlsen alleges counsel should have examined the video system of the ATF office in New York to prove the recording system was operational. Ohlsen accuses counsel of "aid[ing] the government in making a record with no follow up, investigation, or adversarial challenge." The Government argues Ohlsen has not shown the ATF video system was operational in New York or how this would have affected his guilty plea. Further, the Government states Reid repeated his testimony to the grand jury and a copy of the testimony was provided to Ohlsen.

As stated previously, the audio recording of Reid's interview was mistakenly turned off by agents other than those conducting the interview. Ohlsen has failed to provide any support for his accusation an ATF agent gave false testimony, under oath, about the recording system. Ohlsen's counsel acted responsibly and professionally in ensuring a record was made concerning the missing audio of the interview. Ohlsen's counsel performed his constitutional responsibilities

to Ohlsen. Ohlsen has failed to show deficient performance and his claim fails.

Ohlsen's last remaining allegation is his counsel should have secured data of cell phone tower locations to cross-examine witnesses and establish an accurate timeline. The Government asserts it provided the cell tower information to Ohlsen. Ohlsen's claim fails because his counsel was in receipt of the cell phone tower information from the Government. ECF No. 5-29, 31.

4.      Trial Preparation – Motions

Ohlsen makes fifteen allegations concerning his counsel's failure to research, prepare, and file motions for trial. First, Ohlsen alleges his counsel failed to file the following pretrial motions:  a motion in opposition to the Government's 404(b) motion, jury instructions, motions to suppress evidence, motions in limine, and motions to dismiss based on prosecutorial misconduct and perjured testimony. The Government asserts Ohlsen does not specify the grounds for these motions or show they would have been successful, so his claim should be denied.

Ohlsen's claims are not persuasive. His counsel did file motions to suppress evidence. The Constitution does not require his counsel to file motions to suppress on meritless arguments with no basis. As to any supposed jury instructions or motions in limine, Ohlsen's trial was set for September 17, 2012. CD ECF No. 157. A change of plea hearing was set on September 10, 2012, for September 11, 2012. CD ECF No. 171. Although Ohlsen's counsel did not file any motions in limine or proposed jury instructions before his change of plea hearing, this date was still seven days out from trial during which time his counsel could have filed motions had Ohlsen chosen to go to trial. An attorney's performance is not judged based on how far in advance pretrial motions are filed. Ohlsen's counsel was not ineffective for failing to file motions in limine over a week before trial. Ohlsen's allegation counsel should have filed a motion to

dismiss based on prosecutorial misconduct and perjured testimony is also not persuasive because it does not detail any basis for this motion or possible success of such a filing. Simply listing motions Ohlsen would like to have been filed without any facts as to what those motions should have contained does not establish ineffective assistance of counsel.

Ohlsen's allegation his counsel should have filed a motion in opposition to the Government's 404(b) motion also fails. The Government filed its Notice of Intent to Use 404(b) Evidence on August 15, 2012. CD ECF No. 153. Ohlsen's counsel was not required to file a response. Use of this evidence could have been challenged at a pretrial hearing or during the trial prior to its introduction. Ohlsen's counsel was not ineffective for failing to file a response or opposition to the Government's notice. Ohlsen's claims will be denied.

Ohlsen alleges his counsel failed to research, prepare and file the following motions: a motion to compel discovery, subpoenas for records and witnesses, a motion to "object to limited contact with and distance from client (impeded effective representation)," a motion to "allow travel to identify evidence," a motion to "access to interview witnesses," a motion for "additional funds for investigation and counsel," a motion to object to "press leaks – potentially tainting the jury pool" and a motion for change of venue. The Government asserts these claims are not specific and Ohlsen does not establish prejudice.

Ohlsen's claims are vague and conclusory. He does not specify what discovery his counsel should have requested that was not already provided by the Government or who the witnesses are which should have been subpoenaed. He does not explain how his contact with counsel was limited or where he needed to travel. Nor, does he provide any basis for a need for a change of venue or additional funding for his attorneys. Ohlsen's claims fail to establish either prong needed for a claim of ineffective assistance of counsel. His claims will be denied.

Ohlsen alleges his counsel failed to research, prepare, and file a motion for "new bond hearing – after state felonies were overturned – substantial change in circumstance." The Government asserts his claim is refuted by the record. A second detention hearing was held on January 9, 2012, to reconsider Ohsen's detention order upon the request of Ohlsen's counsel. CD ECF No. 73. Magistrate Judge David D. Noce ordered Ohlsen to remain in custody. CD ECF No. 74. Ohlsen's claim fails.

Ohlsen alleges his counsel failed to research, prepare, and file a motion for "access to digital evidence (No computer for 60+ days)." The Government states Ohlsen was granted access to a computer supplied by the Government for Ohlsen's use for six hours a day, seven days a week.

Ohlsen's counsel filed a motion to permit Ohlsen access to a computer to review discovery. CD ECF No. 88. This Court granted Ohlsen access to a computer for discovery review and trial preparation on April 10, 2012. CD ECF No. 89. A U.S. Marshall confirmed Ohlsen's access to the computer with the Crawford County Jail. ECF No. 5-33. Ohlsen had access to this computer for approximately five months before trial. Ohlsen's claim fails because his counsel succeeded in requesting and obtaining computer access for Ohlsen. He has failed to establish how his lack of access for sixty days prejudiced him. Ohlsen's claim will be denied.

Ohlsen alleges his counsel failed to file motions to suppress the following: "Ladue stop – illegal search under Gant," "Ballas Search – No consent for warrant," and "Briefcase – Map, searched years before warrant was issued." The Government contends Ohlsen's claims are entirely conclusory. Ohlsen's claims will be denied because he fails to make a sufficient allegation of ineffective assistance of counsel. The Court cannot determine from Ohlsen's motion the identity or significance of the briefcase to which he refers, or what this stop in Ladue

entailed, much less if there is a valid basis for a motion to suppress suggesting his counsel was ineffective. Ohlsen's claims fail.

Ohlsen alleges his counsel "failed to brief on multiplicious – Count III conduct contained in other counts." The Government asserts Count Three was dismissed as part of the plea agreement and his counsel did file a motion to dismiss due to multiplicity. Ohlsen's claim fails because his counsel did file a motion to dismiss based on multiplicity of Counts Two, Three, Four, and Five. CD ECF No. 41. Additionally, Count III was dismissed pursuant to the terms of the plea agreement. Ohlsen's claim fails.

Next, Ohlsen claims his counsel failed to research, prepare, and file a motion concerning a speedy trial violation. The Government argues there was no speedy trial violation because Ohlsen cannot show seventy non-excluded days elapsed between his initial appearance and his plea of guilty. Additionally, the Government asserts Ohlsen's counsel repeatedly requested additional time to file motions.

A guilty plea waives appeal of an alleged denial of a speedy trial. *United States v. Griffin*, 668 F.3d 987, 990 (8th Cir. 2012). Ohlsen requested an extension of time ten different times from his initial appearance until he pled guilty. He twice signed a waiver of Speedy Trial Act. Ohlsen's allegations are incredulous. His claim for ineffective assistance of counsel for failure to file a motion concerning a speedy trial violation will be denied.

Lastly, Ohlsen claims his counsel failed to "pursue Movant's prior 2255s" in regards to "Witt Information, Criminal History Score, and Expose related government misconduct." A petitioner cannot challenge errors or deficiencies in a § 2255 motion for a criminal conviction in a § 2255 motion regarding a different criminal conviction. No prior § 2255 motions have been filed in regards to this criminal conviction. This motion is not the appropriate avenue to

challenge any errors or deficiencies in Ohlsen's convictions for other crimes. Ohlsen's claims will be denied.

5.      Trial Preparation – Proper Court Room Attire

Ohlsen claims his counsel did not have him measured or fitted for clothing. He states counsel "diverted the funds" held for his clothing and his counsel's failure to assist Ohlsen in purchasing proper court room attire is an indication his counsel never intended to proceed to trial. Further, Ohlsen asserts his counsel was ensuring he would be forced to wear prison clothing during trial. Ohlsen's claim will be denied. An attorney's performance is not judged by whether he had his client measured and fitted for proper clothing attire. There is a wide range of options for appropriate clothing attire between being measured and fitted for specially made clothing to being forced to wear prison clothes. If Ohlsen had gone to trial wearing a prison uniform, he may have had a claim, but that is not the situation before the Court. There is nothing to support Ohlsen's theory a lawyer is ineffective for failing to have his client fitted and measured for clothing. Ohlsen fails to establish his counsel was ineffective.

6.      Investigation

Ohlsen claims his counsel failed to investigate witnesses' backgrounds, government's experts, "which witness were able to testify to what facts," and Ohlsen's competency. The Government contends Ohlsen's claims are conclusory and unsupported by specific allegations. Ohlsen's claims will be denied because he failed to provide any specific facts in regards to his allegations. He does not list the witness' names, or the expert's names, nor any explanation as to why he was not competent and needed a psychological evaluation prior to trial.[15] Therefore,

---

[15] Ohlsen cites *Thomas v. Lockhart*, 738 F.2d 304 (8th Cir. 1984) for the proposition defense counsel is ineffective for failing to investigate the seriousness of the mental problems a defendant suffers. In *Thomas*, the defendant had been in the state mental hospital five times, taken an overdose of drugs, been placed on supervision by the local mental health center, and was under medication at the time of his arrest. *Id.* at 308. There is nothing in this record to

these claims must be summarily dismissed. He has not established ineffective assistance of counsel.

B.     Failure to Consult and Hire Experts

Ohlsen claims his counsel failed to consult and hire experts including an expert in "phone data triangulation/analysis," an expert to testify to travel times in St. Louis, an expert on computer forensics, an expert in exhibit preparation, a photographer, a DNA expert, an explosives expert, expert in audio and video systems, a lie detector test expert, an expert to authenticate audio and video evidence, a medical expert to testify on nerve damage in Ohlsen's arm, a court reporter to transcribe recordings, an engineer to testify there was no damage to the parking garage, and an expert in law enforcement procedures. The Government contends Ohlsen's claims are refuted by the record when he stated he did not know of any other witnesses to contact at the guilty plea hearing. Additionally, the Government argues Ohlsen has not met any of the requirements to establish ineffective assistance of counsel based on a failure to call a witness.

To establish prejudice as a result of ineffective assistance of counsel due to a failure to consult and call an expert, a movant must list "evidence of what a scientific expert would have stated at trial." *Rodela-Aguilar v. United States*, 596 F.3d 457, 462 (8th Cir. 2010) (citing *Day v. Quaterman*, 566 F.3d 527, 538 (5th Cir. 2009)). This includes naming the witness, demonstrating the witness was available to testify and agreed to testify, the content of the proposed testimony, and showing the testimony is favorable to a particular defense. *Day*, 566 F.3d at 538 (requiring this showing for lay and expert witnesses). Ohlsen's statements are his beliefs there were experts who could have testified to these subjects and specific conclusions, but his statements are

suggest Ohlsen had any psychological problems as to need an examination. At the plea hearing, he stated he had never been treated for any mental illness or mental disease. CD ECF No. 209, pg. 4.

unsupported by actual expert opinions. Additionally, he does not include any names of experts, if they would have been able to testify, or if they would have testified. Ohlsen fails to meet the requirements to establish ineffective assistance of counsel due to the failure to consult and hire expert witnesses.

C.    Failure to Advise

Ohlsen alleges his counsel failed to advise him of four issues. First, Ohlsen claims his counsel failed to advise him of the "multiplicious elements of the indictment, especially counts II and III as all the elements of one was contained in the other." The Government contends Ohlsen's claim is contradicted by the record because his counsel filed a motion to dismiss based on multiplicity. It is difficult to believe Ohlsen's counsel filed a motion to dismiss based on multiplicity without advising Ohlsen as to the contents of the motion, especially when one of the counts was dismissed pursuant to the plea agreement. For Ohlsen to prevail on such an incredulous claim, he must provide more support than simply stating his counsel failed to advise him on the issue.

Second, Ohlsen claims his counsel failed to advise him of the elements of Count II, specifically the evidence needed to establish proof of "intent, malice, damage and destruction." The Government states Ohlsen cannot establish prejudice because he was fully informed of the elements of the offense by the Court prior to pleading guilty, and the elements were set forth in the plea agreement which Ohlsen stated he read in its entirety and discussed with his attorney. Assuming Ohlsen's counsel did not advise him of the elements of an offense, Ohlsen's claim still fails for lack of prejudice. Failure of counsel to advise a defendant of the elements of the offense does not establish a reasonable probability the defendant would have gone to trial when the court has informed defendant of the elements. *Schone v. Purkett*, 15 F.3d 785, 790 (8th Cir. 1994). As

the Government stated, Ohlsen told the Court, at the guilty plea hearing, he understood the charges pending against him and had fully reviewed the plea agreement with his counsel. CD ECF No. 209. The entire indictment was read in open Court, at the guilty plea hearing, except Count III which would be dismissed. Ohlsen's claim will be denied.

Third, Ohlsen claims his counsel failed to advise him Counts IV and V were foreclosed by an earlier plea. The Government asserts Ohlsen's claim lacks merit because Counts IV and V were not foreclosed by an earlier plea. According to the Government, Ohlsen pled guilty to possessing two firearms after having been convicted of a felony in 2007, whereas in this conviction, Ohlsen pled guilty to possessing Goex black powder, an explosive, and possessing an unregistered destructive device after having been convicted of a felony. Ohlsen provides no explanation as to why his prior plea would foreclose Counts IV and V, as he does not specify to what prior plea he refers. The Government is correct, Ohlsen's claim lacks merit and will be denied.

Last, Ohlsen alleges his counsel failed to properly advise him "in reference to appealing." The Government claims Ohlsen's allegation is refuted by the record. Ohlsen's claim fails because it is entirely too broad as to allow for any analysis of his counsel's ineffectiveness. In his Reply, Ohlsen claims he requested his counsel file a notice of appeal which counsel did not do until he was out of time. Then, Ohlsen claims his counsel induced him to dismiss his direct appeal by withholding his legal files until he signed the dismissal. Ohlsen's claim fails because he did not have a right to appeal; he waived these rights when he pled guilty. He stated to the Court, at his plea hearing, he understood his rights to appeal had been waived under the plea agreement. Ohlsen again acknowledged his lack of authority to file an appeal when he signed a Consent and Acknowledgement of the Withdrawal of Appeal after he had filed an appeal. *See*

*United States v. Milton Ohlsen*, No. 13-1460. Ohlsen's claim will be denied.

> D.     Right to Testify

Ohlsen alleges his counsel deprived him of speaking to the court or testifying. Ohlsen claims his counsel "induced" him to redact and edit his comments to the Court. Without knowing the actual statements Ohlsen omitted and would like to have spoken to the Court, Ohlsen's claim fails because the lack of specificity in his claim prevents the Court from analyzing if he has a claim for ineffective assistance of counsel.

Next, Ohlsen claims his counsel prevented him from informing the Court of "the nature of his belief that he was not receiving effective representation," "his right to testify on his own behalf at the suppression hearing and trial," and "his right to cross examine witnesses." The Government states Ohlsen's claims are refuted by the record and the claims lack specificity.

In his written plea agreement, Ohlsen stated he was fully satisfied with the representation he received from counsel. At the change of plea hearing the Court noted there was dissatisfaction with counsel from time to time, but Ohlsen did not elaborate. Ohlsen told the Court no one had suggested to him it was permissible not to tell the truth. He also told the Court he understood his right to testify at trial and that he was waiving this right by pleading guilty. Ohlsen also admitted to the Court, under oath, he committed the bombing. As for Ohlsen's claim he was denied his right to cross examine witnesses, Ohlsen has not identified what information he wanted elicited or how his counsel's cross examination of witnesses was ineffective.

As for his claim he wished to testify at his suppression hearing but his counsel would not let him do so, Ohlsen provides no specifics to establish this was prejudicial, even if accepted as true. He does not state what testimony he would have given as to change the outcome.[16] Ohlsen's

---

[16] This Court notes it is unusual for a defendant to testify in a suppression hearing because the defendant is likely to make statements which may be used against him at a later trial.  It is not unusual for a defense attorney to advise his

claims will be denied for failure to establish deficient performance or prejudice.

   E.  Sentencing Errors

  Ohlsen alleges his counsel was ineffective at sentencing. Ohlsen claims his counsel failed to "dispose of pending charges listed in the PSR." The Government argues Ohlsen does not explain the significance of his claim when his pending charges were "exceeding speed limit" and "failure to register vehicle." Ohlsen fails to establish prejudice. Ohlsen's pending charges had no impact on his sentencing because he received the sentence bargained for in the plea agreement (twenty years) and he had far more serious convictions reported in the PSR such as a felon in possession of a firearm conviction. No points were assessed in the presentence report for the offenses Ohlsen mentions. Disposal of the pending charges listed in the PSR would not have changed the result. Ohlsen's claim will be denied.

  Ohlsen claims his counsel did not ask the Court for credit for time served on related cases and "uncredited jail time." Ohlsen does not state the cases for which he believes he should have received credit. The Court will not supplement Ohlsen's argument. The Bureau of Prisons calculates periods of time served. Ohlsen's claim fails.

  Ohlsen alleges his counsel "lost their notes pertaining to issues with the PSR and was therefore unable to comply with all of the corrections necessary in a timely fashion." The Government states his claim is vague and fails to establish prejudice. At the sentencing hearing, Ohlsen's counsel objected to at least eleven different portions of the Presentence Investigation Report. Ohlsen has not identified what objections he requested be made and were not. Ohlsen fails to establish deficient performance or prejudice and his claim will be denied.

  Ohlsen claims his counsel "grossly miscalculated Movant's custody level" and his counsel's ineffectiveness resulted in a higher custody level. The Government states Ohlsen has

client not to testify at a suppression hearing.

cited no authority supporting a miscalculation of an inmate's custody can be the basis for a claim for ineffective assistance of counsel. Ohlsen's custody level is set by the Bureau of Prisons. Custody level is distinguished from the total offense level in Ohlsen's pre-sentence report for custody placement purposes. The Court has no ability to control where a defendant is placed and neither does his attorney. Additionally, Ohlsen does not state the manner in which his counsel was ineffective; he does not state what his counsel did or did not do to cause his custody level to be higher or how it was miscalculated. Ohlsen's claim will be denied.

### F.      Failure to Subject Prosecution to Adversarial Challenge

Ohlsen claims his counsel did not "subject the prosecution to an adversarial challenge." He states his counsel aided the Government and accepted the Government's version of facts. Further, Ohlsen claims his counsel told the Government of mistakes in scientific reports giving the prosecution an opportunity to correct the reports before trial. The Government states Ohlsen has failed to state specific facts allowing for an intelligent assessment of prejudice.

Ohlsen's allegations are factually deficient. He does not provide any factual support for his allegations his counsel aided the Government. Defense counsel is not required to pursue frivolous arguments or challenge every single assertion the Government makes to provide effective representation under the Constitution. A review of the transcript of the suppression hearing shows Ohlsen's counsel challenged the Government's witnesses. Additionally, Ohlsen's counsel protected Ohlsen's interest by requiring a record be made before the court regarding the audio mishap. While Ohlsen's counsel may not have defended him as vigorously as Ohlsen would have liked, it does not constitute ineffective assistance of counsel.[17]

Ohlsen asserts in his Reply he was essentially without counsel because of the numerous

---

[17] The Court in no way suggests Ohlsen's counsel did not defend him as vigorously as required under the Constitution or the Rules of Professional Conduct.

failures he has outlined in his Motion. However, the Court has gone through each of Ohlsen's claims and has yet to find a single claim sufficient to gain an evidentiary hearing, much less overturn his conviction for ineffective assistance of counsel. Ohlsen's attorneys worked hundreds of hours on his case, did DNA testing on chewing gum found at the scene, hired investigators to review discovery, cell phone records, cell tower locations, and interviewed potential witnesses, along with many other tasks. His counsel was not ineffective. Ohlsen's claim will be denied.

G.      Counsel Induced Plea

Ohlsen claims his counsel induced him to plead guilty even though he "adamantly maintained his innocence." The Government claims Ohlsen's allegation is contradicted by the record when he admitted under oath and in the written plea agreement he committed the charged crimes. The Court confirmed at the change of plea hearing that Ohlsen understood his rights and was voluntarily pleading guilty. As the Government states in its brief, there was a question at the sentencing hearing if Ohlsen was now denying his guilt for the bombing. Ohlsen stated he wanted to proceed to sentencing and was not denying his guilt. Conclusory statements about one's innocence will not suffice to establish misconduct or ineffectiveness on the part of Ohlsen's counsel, particularly when the records stands in contrast to his claims. Ohlsen's claim will be denied.

H.      Failure to Obtain Exculpatory Evidence

Ohlsen claims his counsel did not obtain the impeachment and exculpatory evidence he references throughout his motion which eliminated counsel's ability to be an effective advocate for Ohlsen. The Government states this claim is conclusory and vague. Ohlsen's claim is extraordinarily broad. In his Reply, in support of this claim, Ohlsen reiterates all of his prior claims regarding his counsel. The Court has rejected Ohlsen's prior arguments his counsel

should have acted differently. Ohlsen must provide more than conclusory statements. Ohlsen's claim will be denied.

In all of his claims, Ohlsen fails to establish ineffective assistance of counsel and the claims must be denied.

### 3. *Claims of Lack of Jurisdiction*

Ohlsen claims the Court lacked jurisdiction to accept the guilty plea for four reasons: Counts IV and V were barred by Ohlsen's earlier plea; the Court was aware Ohlsen's counsel's representation fell below the standard required by the Constitution and Ohlsen believed there was prosecutorial misconduct; the lack of factual basis for a plea on Count II because there was no damage or destruction to the parking garage; and the indictment on file is unsigned so it is not a valid instrument. The Government states these claims are refuted by the record and the indictment is signed by the prosecutor and grand jury foreperson.

The Court has already addressed and denied Ohlsen's claim Counts IV and V were barred by a previous plea by Ohlsen *supra*. The Court has also already addressed and denied Ohlsen's claims his counsel was ineffective in violation of the Sixth Amendment and his claims of prosecutorial misconduct. As for Ohlsen's claim there was no damage or destruction to the parking garage, Ohlsen admitted in his plea agreement and to the Court the parking garage was damaged. Lastly, the indictment is signed by the prosecutor and grand jury foreperson. CD ECF No. 1. Ohlsen's claim for lack of jurisdiction will be denied.

### 4. *Claims of Actual Innocence*

Ohlsen states he is actually innocent and facts in support of his innocence can be found throughout his motion showing he was not in Clayton at the time the device was delivered to the parking garage. The Government asserts his claim is refuted by the record. Ohlsen pled guilty

and told the Court, under oath, he committed the bombing. These solemn declarations are not to be easily discarded each time a defendant changes his mind. Ohlsen provides a list of facts about where his cell phone was located throughout the time period to show he is innocent. However, as several witnesses stated, Ohlsen's cell phone was given to another person during the time of the bombing so that it would show locations different from Clayton. Therefore, these "facts" Ohlsen's provides are unpersuasive. Ohlsen's claim of actual innocence will be denied.

     *5.*     *Claim of Inducement of Plea*

Ohlsen states his guilty plea was unlawfully induced and involuntary because he did not understand the nature of the charge or consequences of the plea. The Court found the following at Ohlsen's change of plea hearing:

> "The Court finds that in the Case of the United States of America versus Mr. Milton Ohlsen, III . . . He is fully competent and capable of entering an informed plea, he is fully aware of the nature of the charges of Counts I, II, IV, and V, and he is aware of the consequences of his plea, that the pleas are knowing, voluntary, they are made willingly and intentionally, and they are supported by an independent factual basis containing each of the essential elements of the offenses."

CD ECF No. 209, pg. 24. The Court made this determination after asking a series of questions to which Ohlsen responded. Ohlsen was given an oath to tell the truth at the beginning of the guilty plea hearing. He was asked if he had fully discussed the charges and his case, in general, with his counsel, to which he answered, "I have." *Id.* at 5. Counts I, II, IV, and V of the indictment were read into the record by AUSA Costantin. *Id.* at 7. After these Counts were read, Ohlsen was asked by the Court, "Do you understand the charges pending against you?" *Id.* at 8. Ohlsen responded, "I believe [I] do, sir." *Id*. Ohlsen was told by the Court, he had a right to maintain his plea of not guilty and have a trial before a jury or a judge where AUSA Costantin would have the burden to prove his guilt beyond a reasonable doubt and if he entered a plea guilty, he would be found guilty and there would be no further trial of his case. *Id.* at 9-10. AUSA Costantin stated,

on the record, facts she believed she could prove if called upon to do so at a trial:

> Your Honor, the Government's evidence would show beyond a reasonable doubt that on October 15th of 2008, the defendant transported an explosive device containing Goex black gun powder to 190 Carondelet in the Eastern District of Missouri with the intent that the device would explode and cause death or serious bodily injury to R.E. and damage to the garage.
>
> The defendant concealed the explosive device in a gift basket and placed it next to an Acura TL that he incorrectly believed belonged to R.E. The explosive device contained Goex black gun powder, which is manufactured in Louisiana. The defendant's transportation of the bomb was the last portion of the transportation of the Goex black gun powder from Louisiana.
>
> On October 16th, 2008, the defendant's destructive device exploded and caused permanent bodily injury to John Gillis, who had moved the basket because it was blocking access to the driver's door of his Acura TL. The explosion caused damage to the parking garage at 190 Carondelet, and to the Acura TL. The parking garage operated and was used in interstate commerce, that is persons used the garage who traveled in interstate commerce, and the garage leased space to companies that did business in interstate commerce.
>
> The defendant was convicted on July 9th, 1995, of possession with intent to distribute cocaine, a felony punishable by imprisonment for a term exceeding one year, in the U.S. District Court, Western District of Missouri, in cause 6:95-CR-03033-022.
>
> On October 15th, 2008, in the Eastern District of Missouri, the defendant knowingly possessed Goex black gun powder, an explosive, that had been shipped or transported in or affecting interstate and foreign commerce.
>
> On October 15th, 2008, the defendant possessed the destructive device that was not registered to him in the National Firearms Registration and Transfer Record.

*Id.* at 11-12. After this recitation, Ohlsen was asked by the Court, "Do you have any disagreement with those related facts?" *Id.* at 12. Ohlsen responded, "No, sir." *Id.* The Court told Ohlsen, a twenty-year term of imprisonment would be imposed upon him at the time of sentencing. *Id.* at 16. The Court asked if this was understood by everyone, and Ohlsen answered, "Yes, Your Honor." *Id.* at 16-17. The Court asked Ohlsen,

> Do you know Mr. Ohlsen, that the offense charged in the indictment is a felony offense as to Counts I, II, IV, and V, and if you enter pleas of guilty, and if your pleas are accepted, you will be found guilty of those offenses, and such findings will deprive you of valuable civil rights, such as the right to vote, to serve as a juror, and the right to possess any kind of a firearm?

Ohlsen answered, "Yes sir. Some of those are restored though, aren't they?" *Id.* at 18. Ohlsen

was advised by the Court, after he talked to his lawyer, he would be asked if he was going to change his plea of guilty, maintain his plea of not guilty, or enter some other plea. *Id.* at 22. After speaking with his attorneys, Ohlsen stated, "I will change my plea to guilty, sir." *Id*. at 23. The Court asked him if he understood all of the questions, and he answered, "I believe I have." *Id*. The Court then asked if he answered all of the questions truthfully and honestly, to which Ohlsen answered, "Yes, I have." *Id*. At the end of the guilty plea hearing, Ohlsen affirmed his guilty plea knowing he would be sentenced to a term of twenty years. *Id.* at 24. Ohlsen's plea was not unlawfully induced or involuntary. The Court does not believe Ohlsen's attorneys were ineffective.

6. *Claim of Cumulative Effect*

Ohlsen claims "the accumulation of errors in this case violated Movant's right to due process." The Government states his claim should be denied because cumulative error cannot give rise to a finding of prejudice. The Eighth Circuit has held cumulative error will not create a showing of prejudice. *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) ("We have repeatedly recognized [that] "a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test.'"). Ohlsen has not established prejudice in any of the claims he has raised; thus, he has not shown a constitutional violation and his claim will be denied.

7. *Claim of Newly Discovered Evidence*

Ohlsen alleges new evidence exists pertaining to Witt's credibility and testimony. Specifically, Ohlsen refers to audio recordings of Witt selling his testimony in exchange for favors for another client and financial compensation, Witt's federal indictment, and news stories and witnesses stating Witt removed items from Ohlsen's loft. Any claims addressing Witt have

been addressed *supra* and will be denied. Witt was not going to be called by the Government as a witness. Any evidence relating to his credibility is not relevant to Ohlsen's guilty plea. Ohlsen's claim of newly discovered evidence will be denied.

8.      *Claims of Sentencing Errors*

Ohlsen claims there were four errors in sentencing:  the Court should have granted credit against Ohlsen's prior federal sentence; "time credit should have been issued for uncredited jail time;" Ohlsen was eligible for "hard time credit" for time spent above his custody level, and a sentencing disparity exists. Ohlsen has not established he is entitled to credit for time served. He cannot be given credit for time served in a different federal sentence, issued by a different court, for a different offense. Simply stating a sentencing disparity exists does not establish a sentencing disparity. Ohlsen must provide support for his allegations there is a sentencing disparity and his theory he is eligible for "hard time credit" and he has not.  Ohlsen has failed to sufficiently allege any errors in sentencing as to allow for relief. Ohlsen's claim will be denied.

9.      *Claim of a Violation of Plea Agreement by Government*

Ohlsen alleges the Government violated the plea agreement because it has not provided Ohlsen with a copy of his hard drive as agreed. The Government states there was no such agreement and it provided everything asked for by Ohlsen. Computers, a hard drive, and printers without evidentiary value were returned to Ohlsen's counsel. ECF No. 5-34. Ohlsen has also been provided with photographs Ohlsen has requested from the computer with evidentiary value being kept by the Government. A review of the plea agreement reveals the Government did not agree to provide more than this. Ohlsen's claim fails.

## IV.      CONCLUSION

Ohlsen has failed to establish prosecutorial misconduct or ineffective assistance of

counsel for a variety of reasons addressed by the Court, *supra*. A hearing is not required because the claims were either vague, conclusory, or palpably incredible, or controverted by the record in this case and by evidence submitted by the United States. *See Machibroda v. United States*, 368 U.S. 487, 495-96 (1962); *Watson v. United States*, 493 F.3d 960, 964 (8th Cir. 2007).

## IV.     CERTIFICATE OF APPEALABILITY

The Court finds Ohlsen has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing that the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court shall not issue a certificate of appealability as to any claims in Ohlsen's Motion.

Accordingly,

**IT IS HEREBY ORDERED** that Milton Ohlsen's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 1] is **DENIED**. Milton Ohlsen's Motion is **DISMISSED, with prejudice**.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to any claim raised in Milton Ohlsen's Motion.

So Ordered this 12th day of May, 2016.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**